[Counsel Identified on Signature Page]

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| JONNIE HOMYK, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CHEMOCENTRYX, INC. and THOMAS J. SCHALL, <br><br> Defendants. | Master Case No. 4:21-cv-03343-JST *and related cases,* Nos. 4:21-cv-04357-HSG, 4:22-cv-00499-JST <br><br> *The Honorable Jon S. Tigar* <br><br> **STIPULATED DISCOVERY ORDER** |

After conferring on these matters, the Parties propose to the Court the following stipulated order ("Order") for production of electronically stored information and paper discovery.  The parties are aware of the importance the Court places on cooperation and commit to work together in good faith throughout the matter, consistent with this Court's Guidelines for the Discovery of ESI.

**I.      DEFINITIONS**

      **A.**      "Litigation" refers to the case captioned above.

      **B.**      "Electronically Stored Information" or "ESI" means information that is stored

1   electronically, regardless of the media or whether it is in the original format in

2   which it was created, as opposed to stored in hard copy (i.e., on paper).  ESI

3   carries the broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and

4   Fed. R. Evid. 1001.

5   **C.**   "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and

6   includes both ESI and paper documents.

7   **D.**   "Metadata" means i) information embedded in a Native File that is not ordinarily

8   viewable or printable from the application that generated, edited, or modified such

9   Native File, or ii) information generated automatically by the operation of a

10   computer or other information technology system when a native file is created,

11   modified, transmitted, deleted or otherwise manipulated by a user of such system.

12   Metadata is a subset of ESI.

13   **E.**   "Party" or "Parties" means Plaintiff and Defendant.

14   **F.**   "Producing Party" means a Party that produces documents, including non-parties.

15   **G.**   "Receiving Party" means a Party to whom documents are produced.

16   **II.**   **PRESERVATION**

17   **A.**   **Preservation Obligations:**  Parties will take reasonable and proportionate steps

18   to preserve unique ESI that is within their respective possession, custody, or control and is

19   subject to discovery pursuant to FRCP 26(b)(1).  The parties will meet and confer regarding the

20   scope of preservation, including custodians, data sources, date ranges, and categories of

21   information that should have been or should be preserved in connection with this Litigation.  By

22   preserving or producing information for the purposes of this Litigation, the Parties are not

23   conceding that such material is discoverable.

24   Notwithstanding the foregoing, except upon a showing of good cause, the

25   following data sources and document types are not discoverable in this Litigation, and the Parties

26   shall have no obligation to preserve data contained in the following forms:

27   1.   Back-up tapes or other long-term storage media that were created strictly

28   for use as a data back-up or disaster recovery medium.

2.      Temporary data stored in a computer's random access memory (RAM), or other operating system files.

3.      Deleted, fragmented, unallocated space or other data only accessible by forensics.

4.      On-line access data such as temporary Internet files, history, cache, cookies, and the like.

5.      Server, system, or network logs.

6.      Data remaining from systems no longer in use that is unintelligible on systems in use.

7.      Ephemeral data automatically deleted by its nature or design by the application, settings, or operating systems.

**B.      ESI Not Reasonably Accessible:**  If a Producing Party contends that any discoverable ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (e.g., the type of system used to store the ESI) and the location of such ESI.  The Parties shall negotiate in good faith concerning the production of any such ESI.  The data sources not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) will be preserved but not searched, reviewed, or produced until if/when the Parties reach an agreement.

**III.      SEARCH AND TECHNOLOGY ASSISTED REVIEW**

**A.      Search:**  The Parties will meet and confer in good faith regarding the disclosure of search methodology, including formulation and use of search terms and/or application of technology assisted review (TAR).

**B.      Technology Assisted Review:**  If a Party intends to use TAR to cull or otherwise exclude ESI from collection, review, or production, the Parties shall meet and confer to discuss whether the use of TAR is appropriate and, if so, a proposed protocol for the use of TAR. The

1  Parties do not need to disclose the use of TAR solely for the purposes of sorting or prioritizing

2  documents for review.

3  **IV.     PRODUCTION FORMAT**

4      **A.     Production Format Protocol:**  ESI and Paper Documents shall be produced in

5  the format provided in Appendix A (Production Specifications)**.**

6  **V.     PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS**

7      **A.     Privilege Log**.  The Parties agree that certain privileged communications or

8  documents need not be included on a privilege log: (1) Communications regarding litigation

9  holds or preservation, collection, or review in this or any Litigation; and (2) Communications

10  between each Party and their respective litigation counsel in this Action concerning this Action

11  that post-date the filing of the Amended Complaint (ECF 47).  The Parties agree that the Parties'

12  privilege logs will be produced on a periodic basis, such that privilege logs for documents

13  produced prior to the deadline to produce documents from agreed-upon custodians and

14  documents produced prior to the deadline for substantial completion of discovery will be

15  produced no later than thirty days after each of those deadlines.  *See* Joint Case Management

16  Statement (ECF 65) at 8(e).

17      **B.     Privilege Log Contents.**  For any document withheld in its entirety or produced

18  but redacted, the Producing Party will produce privilege/redaction logs in Excel format or any

19  other format that permits electronic sorting and searching.  Documents shall be logged

20  individually and shall not be logged on the family level.  For document families in which fewer

21  than all of the documents are withheld as privileged or protected, the privilege log entry for the

22  withheld document(s) shall identify the Bates number of the produced family member.  The

23  Producing Party and the Receiving Party may modify the deadlines for production of

24  privilege/redaction logs by agreement.

25      For each document withheld or redacted, the Producing Party's privilege/redaction logs

26  shall include the following information: (1) Date (including, if applicable, the date the document

27  was created, the date it was modified, and the date it was sent); (2) Author(s); (3) For documents

28  produced, but redacted on the ground of privilege, the starting and ending Bates number;

(4) Recipient(s), CC(s) and BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda and identification of which of them are attorneys); (5) the title or subject of a document to the extent the title does not reveal privileged or work-product protection information; (6) Specification of the privilege claimed; and (7) A description of the document and the basis for the privilege claim.

### C.   502(d) Order and Clawback Procedure.

1.   **Non-Waiver By Mere Production.** This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. The mere production of privileged documents and ESI in this case shall not in and of itself, and without more, waive, for purposes of this case or otherwise, any attorney-client privilege or work product protection that otherwise would apply. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

2.   **Time For Asserting Privilege And Protection.**  A Producing Party may assert privilege or protection over produced documents and ESI by notifying the Receiving Party(ies) in writing of the assertion of privilege or protection, except that: (i) Affirmative use of ESI or a document by the Producing Party, including in a filing with the Court, waives privilege and protection with respect to it and may waive privilege as to other ESI and documents; and (ii) Upon use in the case by another of ESI or a document that was produced by a Party, that Producing Party must promptly assert any claimed privilege and/or protection over it and request return or destruction thereof.  Upon receipt of notification, the Receiving Party shall immediately take all reasonable steps to destroy or return all copies, electronic or otherwise, of such document or other information, and shall provide a certification that it will cease further review, dissemination, and use of the Protected Information, unless it seeks to dispute the Producing Party's claim of privilege/protection according to Paragraph 3 of this Section.  If, prior to receiving the notice described in the first sentence of this Paragraph 2, the Receiving Party disseminated to any third Party (including pursuant to the Protective Order in this Litigation entered by this Court on April 24, 2023) any Protected Information to which the notice applies,

upon receipt of such notice, the Receiving Party shall promptly notify any recipients of the Protected Information that such Protected Information is subject to a claim of privilege by the Producing Party and must be deleted and/or destroyed and may not be disseminated.

3. **Disputing Claims of Privilege/Protection Over Produced Documents.** If, upon receipt of notice of the assertion of privilege or protection over produced documents or ESI described in Paragraph 3 of this Section, the Receiving Party plans to dispute the claim of privilege/protection, it shall: (i) to whatever extent it contests the assertion of privilege or protection, promptly so notify the Producing Party, and maintain the contested documents and ESI in confidence pending resolution of the contest by the Court; and (ii) to whatever extent the Receiving Party does not contest the assertion of privilege or protection, promptly certify in writing to the Producing Party that it has returned or destroyed the applicable document(s) and/or ESI, and has made reasonably diligent efforts to identify and destroy each copy thereof and all information derived therefrom (normally reasonable diligence will not include disaster recovery media).

4. **Resolving Disputes Regarding Privilege and Work Product Claims.** Following the receipt of a privilege/redaction log, a Receiving Party may identify, in writing, the particular documents that it believes require further explanation. Within fourteen (14) days following such identification, or a mutually agreeable alternative date, the Parties shall meet and confer to discuss the Receiving Party's request. In the event of a contested assertion of privilege or protection over produced documents that cannot be resolved amicably after meeting and conferring in good faith, either Party may bring the contest to the attention of the Court by motion.

**D.     Contesting Claim of Privilege or Work Product Protection.** Nothing in this Order shall limit the Receiving Party's right to challenge the Producing Party's claim that any information is protected from disclosure by the attorney-client privilege or work product doctrine. If, after undertaking an appropriate meet-and-confer process, the Parties are unable to resolve any dispute they have concerning the protection of documents for which a claim of Disclosure has been asserted, the Receiving Party may file the appropriate motion or application

1  as provided by the Court's procedures to compel production of such material.  Any Protected

2  Information submitted to the Court in connection with a challenge to the Producing Party's claim

3  of attorney-client privilege or work product protection shall not be filed in the public record, but

4  rather shall be redacted, filed under seal, or submitted for in camera review.

5  **VI.    NON-PARTY SUBPOENA**

6        A Party that issues a non-party subpoena is responsible for producing any

7  documents obtained under a subpoena to all other Parties promptly, and in no instance more than

8  five (5) business days after receipt of such production.

9  **VII.    DATA PRIVACY**

10       The Parties will meet and confer to the extent that any search or production is

11  limited by a foreign country's data privacy laws.

12  **VIII.    LIMITATIONS ON PRODUCTION**

13       The Parties will endeavor to produce documents in a reasonably timely manner

14  and in accordance with the timelines set forth in the Federal Rules of Civil Procedure.  The

15  Parties recognize, however, that strict adherence to those requirements may not be possible in all

16  situations and with all data.  Parties will meet and confer regarding any potential deviations from

17  this ESI Order.  Production in the Litigation is anticipated to be conducted on a rolling basis with

18  Parties making reasonable efforts to expedite the process.  If either Party feels production has

19  been unreasonably delayed, the Parties agree to confer via telephone or in person prior to court

20  involvement.

21  Dated:  August 11, 2023                              Respectfully submitted,

22                                                        LATHAM & WATKINS LLP

23

24                                    By: */s/* Meryn C. N. Grant
                                          Meryn C. N. Grant (Bar No. 291315)

25                                        *Meryn.Grant@lw.com*
                                          355 South Grand Avenue

26                                        Los Angeles, CA 90071-1560
                                          T: (213) 485-1234 / F: (213) 891-8763

27                                        Michele D. Johnson (Bar No. 198298)
                                          *Michele.Johnson@lw.com*

28                                        650 Town Center Drive, 20th Floor

1   Costa Mesa, CA 92626-1925
    T: (714) 540-1235 / F: (714) 755-8290
2

3   Colleen C. Smith
    *Colleen.Smith@lw.com*
    12670 High Bluff Drive
4   San Diego, California 92130
    T: (858) 523-5400 / F: (858) 523-5450
5

6   *Attorneys for Defendants ChemoCentryx, Inc.
    and Thomas J. Schall*

7

8   BERNSTEIN LITOZITZ BERGER &
    GROSSMAN LLP
9

10  By: /s/ Salvatore Graziano
    Salvatore Graziano (admitted *pro hac vice*)
11  *salvatore@blbglaw.com*
    Abe Alexander (admitted *pro hac vice*)
12  *abe.alexander@blbglaw.com*
    1251 Avenue of the Americas
13  New York, NY 10020
    T: (212) 554-1400 / F: (212) 554-1444
14

15  Jonathan D. Uslaner (Bar No. 256898)
    *jonathanu@blbglaw.com*
    Lauren M. Cruz (Bar No. 299964)
16  *lauren.cruz@blbglaw.com*
    2121 Avenue of the Stars, Suite 2575
17  Los Angeles, CA 90067
    T: (310) 819-3470
18

19  *Lead Counsel for Lead Plaintiff Indiana Public
    Retirement System and the Class*

20

21

22

23  SO ORDERED, this 14th day of _____ August _____, 2023

24  _____

25  JON S. TIGAR
    United States District Judge
26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the foregoing Joint Stipulation and [Proposed] Order to Produce Electronically Stored Information and Paper Discovery.  Pursuant to L.R. 5-1(h)(3) regarding signatures, I, Meryn C. N. Grant, attest that concurrence in the filing of this document has been obtained.


Dated: August 11, 2023                                           /s/ Meryn C. N. Grant_____

<u>**APPENDIX A**</u>

**PRODUCTION FORMAT PROTOCOL**

## I.  PRODUCTION OF HARD COPY AND ELECTRONICALLY STORED INFORMATION

**A.  Image Files.**  Document images shall be produced in a single-page Group IV tagged image file format (TIFF) with at least 300 DPI print setting. Documents containing color may but do not need to be produced in single-page color JPEG format initially. Each image shall have a unique file name, which is the Bates/control number of the document. Original document orientation shall be maintained (*i.e.,* portrait to portrait and landscape to landscape). Images shall reflect all data, including track changes, comments, and speaker notes, that would otherwise be visible to the reader using the native software that created the document.

**B.  Color.**  If an original document contains color necessary to understand the meaning or content of the document, the Producing Party shall honor reasonable requests for a color image and/or native file of the document. Color images should be produced in single-page JPEG format.

**C.  Text Files.**  For each document, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates/control number of the first page of the document. Text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a hard copy file. In these instances, a text file created using optical character recognition (OCR) will be produced in lieu of extracted text.

**D.  Native Files.**  Unless redacted or for some other good cause, spreadsheets, audio or video media files, documents with embedded media files, or any other files that lose significant information and meaning if produced as an image shall be produced in native format. Any files that are produced in native format shall be produced with a Bates-numbered TIFF image slip-sheet stating the document has been produced in native format, as well as all extracted text and applicable metadata set forth in Paragraph IV.

**E.  Hard Copy Documents.**

  **1.  OCR Acquired Text Files.**  When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as "auto-skewing", "auto-rotation" and the like should be turned on when documents are run through the process.

  **2.  Unitizing of Documents.**  In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.,* paper documents should be logically unitized). In the case of an organized compilation of separate documents - for example a binder containing several separate

documents behind numbered tabs - the documents behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize documents correctly.

F. **Load files.**  Except where noted in section (L) below, all ESI is to be produced in electronic format, with file suitable for loading into a compatible litigation support review database. All productions will include both image and metadata load files, as described below in Paragraph III, Load File Format.

1. **Delimited Text File**:  A delimited text file (.DAT or .CSV) containing the fields listed in Paragraph III should be provided.  The delimiters for the file can be Concordance defaults, but defined delimiters are acceptable:

   - Comma - ASCII character 20 ( )
   - Quote -  ASCII character 254 (þ)
   - Newline - ASCII character 174 (®)

2. **Image Cross-Reference File (Load File)**:  The Image cross-reference file (.OPT) is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database.  The format for the file is as follows:

   ImageID,VolumeLabel,ImageFilePath,DocumentBreak,PageCount

   - **ImageID**: The unique designation used to identify an image. This should be the Bates number of the document.
   - **VolumeLabel**: The name of the volume.
   - **ImageFilePath**: The full path to the image file.
   - **DocumentBreak**: If this field contains the letter "Y," then this is the first page of a document. If this field is blank, then this page is not the first page of a document.
   - **PageCount**: Number of pages in the document.

   Sample Data:

   CNTRL00000001,VOL001,\IMAGES001\CNTRL00000001.TIF,Y,,,1
   CNTRL00000002,VOL001,\IMAGES001\CNTRL00000002.TIF,Y,,,2
   CNTRL00000003,VOL001,\IMAGES001\CNTRL00000003.TIF,,,,
   CNTRL00000004,VOL001,\IMAGES001\CNTRL00000004.TIF,Y,,,4
   CNTRL00000005,VOL001,\IMAGES001\CNTRL00000005.TIF,,,,
   CNTRL00000006,VOL001,\IMAGES001\CNTRL00000006.TIF,,,,
   CNTRL00000007,VOL001,\IMAGES001\CNTRL00000007.TIF,,,

**G. De-Duplication.** ESI shall be e-duplicated globally across all custodians and data sources (both vertically or horizontally). Hard copy documents should not be de-duplicated. All custodians who were in possession of a de-duplicated document must be identified in the CUSTODIANS_ALL metadata field (*see* paragraph III). Exact duplicate documents shall only be identified based on individual document MD5 or SHA-1 hash values only. However, removal of duplicate documents shall be done at the family level (e.g., a standalone document shall not be removed if it has the exact duplicate as part of an Email family.) All Blind Copyees (BCC) recipient names that would have been provided in the BCC metadata field but are now excluded because of de-duplication must be identified in the BCC metadata field (*see* paragraph III). As part of rolling productions of documents or other ESI, the producing party shall provide supplement load files, which should include updated CUSTODIANS_ALL, FILEPATHS_ALL, and BCC metadata (if requested).

**H. Redaction.** If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. ESI that does not render well (e.g., spreadsheets) or cannot be rendered in mage format (e.g., audio files) can be redacted in native format. The Producing Party will provide searchable text for those portions of the document that have not been redacted.

**I. Metadata Fields and Processing.** Each of the metadata and coding fields set forth in Paragraph IV that can be extracted from a document shall be produced for that document. The Parties are not obligated to populate manually any of the fields in Paragraph IV if such fields cannot be extracted from a document, with the exception of the BATES-related, PRODVOLID, CUSTODIAN, CUSTODIANS_ALL, and TIMEZONE fields, which shall be populated by the Producing Party.

**J. System Files.** Common system and program files need not be processed, reviewed or produced.

**K. Email.** Email shall be collected in a manner that maintains reliable email metadata and structure. Whenever possible, email shall be collected from the Producing Party's email store or server. Metadata and "header fields" shall be extracted from email messages.

**L. Microsoft "Auto" Feature and Macros.** Microsoft Office applications, including Word, Excel and PowerPoint, may contain "auto" feature settings that would cause a document date or similar information within the document, file names, file paths, etc. to automatically update when processed. If the Producing Party identifies "auto date", "auto file name", "auto file path" or similar features within the documents that would deliver inaccurate information for how the document was used in the ordinary course of business, a TIFF image branded with the words "Auto Date", "Auto File Name", "Auto File Path" or similar words that describe the "auto" feature shall be produced. Similarly, if a document contains a "macro", the document shall be branded with the word "Macro".

**M. Embedded Objects.**  Non-image files embedded within documents, such as spreadsheets within a PowerPoint, will be extracted as separate documents and treated like attachments to the document in which they were embedded.  Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds need not be extracted as separate documents.

**N. Compressed Files.**  Compression file types (*e.g.,* .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files.  The container file itself shall not be produced.

**O. Other ESI that is Impractical to Produce in Traditional Formats (aka, Structured Data).**  The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or other traditional formats. To the extent a response to discovery requires production of discoverable electronic information contained in a database, the Parties agree to confer to define appropriate parameters for querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (*e.g.*, Excel, CSV or SQL format).

**P. Endorsements.**  The Producing Party will brand all production images in the lower right-hand corner with the corresponding Bates/control numbers, using a consistent font type and size.  Bates numbers should include an alpha only prefix (e.g. "ABC"), the Bates numbering shall be a minimum of eight (8) characters in length and shall not include spaces, underscores, or any other special characters, except hyphens.  The Bates number must not obscure any part of the underlying data. The Producing Party will brand all production images in the lower left-hand corner with all confidentiality designations, as needed, in accordance with confidentiality definitions as agreed to by the Parties.

**R. Password-Protected Files.**  Password-protected or otherwise encrypted documents must be produced in decrypted format.  The Producing Party must make an attempt to unlock the document prior to production.   If the Producing Party is unable to decrypt a document using reasonable standard forensic techniques, the Producing Party shall retain a listing of such documents.

## II.  REQUESTED METADATA FIELDS FOR ESI

### Standard Fields:

| FIELD NAME | TYPE | DESCRIPTION | EXAMPLE / FORMAT |
|---|---|---|---|
| PRODBEGBATES | All | The production Bates number associated with the first page of a document. | ABC00000001 |
| PRODENDBATES | All | The production Bates number associated with last page of a document. | ABC00000003 |
| PRODBEGATTACH | All | The production Bates number associated with the first page of the parent document. | ABC00000001 |
| PRODENDATTACH | All | The production Bates number associated with the last page of the last attachment in the document family. | ABC00000008 |
| PRODVOLID | All | Production volume name. | ABC-VOL-001 |
| PGCOUNT | All | Total number of pages for a document. Slipsheets will indicate one (1) page. | 25 |
| CUSTODIAN | All | The name of the first-processed custodian or data source the files belong to.  For persons, this field should be populated as last name, first name. | Doe, John |
| CUSTODIANS_ALL | All | All custodians who were in possession of a de-duplicated document.  This field should be populated as last name, first name and separated by semicolons for additional Custodians. | Doe, John; Doe, Jane |
| RECORD_TYPE | All | The record typing indicating whether the document is an email, including email attachment, email attachment (email) [for attachments that are emails], E-Doc, or E-Doc Attachment, or similar designations; Hard Copy; or Text from a messaging application, including SMS, MMS, Chat, or similar designations. | Email; Text/Chat/IM; Hard Copy |
| FILE_EXTENTION | All | The file extension of a document. | docx |
| FILE_NAME | All | The file name of a document. | Document_Name.xls |
| EMAIL_SUBJECT | Email | The subject of an email. | Re: resume |

| DOC_TITLE | E-Files | The extracted document title for a loose file or attachment. | Resume.docx |
|---|---|---|---|
| DOC_AUTHOR | E-Files | The author of a document from entered metadata. | John Doe |
| EMAIL_FROM | Email | The email address and name of the person sender in the FROM field of every email metadata. | John Doe <jdoe@acme.com> |
| EMAIL_TO | Email | The email addresses and names of the recipients in the TO field of the email. Multiple email addresses and names should be separated by semicolons. | Jane Smith <jsmith@acme.com |
| EMAIL_CC | Email | The email addresses and names of the recipients in the CC field. Multiple email addresses and names should be separated by semicolons. | Bob Johnson <bjohnson@acme.com>; Sally May <smay@acme.com> |
| EMAIL_BCC | Email | The email addresses and names of the recipients in the BCC field. Multiple email addresses and names should be separated by semicolons. | John Doe <jdoe@acme.com> |
| DATESENT | Email | The date when an email was sent. | MM/DD/YYYY |
| DATESENT_TIME | Email | The time an email was sent. | HH:MM:SS |
| DATERECEIVED | Email | The date an email was received. | MM/DD/YYYY |
| DATERECEIVED_TIME | Email | The time an email was received. | HH:MM:SS |
| DATELASTMOD | E-Files | The date a document was last modified. | MM/DD/YYYY |
| DATELASTMOD_TIME | E-Files | The time the document was last modified. | HH:MM:SS |
| DATECREATED | E-Files | The date the document was created. | MM/DD/YYYY |
| DATECREATED_TIME | E-Files | The time the document was created. | HH:MM:SS |
| FILESIZE | All | The size of the file in kilobytes (KB) including embedded attachments. | 125256 |
| TIMEZONE | All | The time zone the document was processed in. | PST, CST, EST, etc. |
| FILEPATH | All | The original file path to the source location of the native file in original environment (e.g., local folder, network folder, email folder, or files and/or mail store, etc.). The file path should be prepended with the Custodian name. | \Doe_Jane\My_docs\resume.docx |
| HASH | All | The MD5, SHA, or similar "de-duplication key" hash value assigned | 9CE469B8DFAD1058C3B1E745001158 |

|  |  | to a document during processing. | EA |
|---|---|---|---|
| REDACTED | All | Identifies whether a document is redacted. | Yes or Blank |
| CONFIDENTIALITY | All | Identifies a document's confidentiality designation. | Highly Confidential |
| NATIVELINK | All | The relative path to a native copy of a document. The native file should be named per the control number or Bates number, if the document is produced. | \NATIVES\001\ABC00000001.xlsx |
| TEXTLINK | All | The relative path to a text file containing extracted OR OCR text of the document. The Text file should be named per the control number or Bates number, if the document is produced. | \TEXT\001\ABC00000001.txt |
| PARTICIPANTS | Text/Chat /IM | The name of each participant of a text or chat message.  For persons, this field should be populated as last name, first name and the phone number of the person. | Doe, John; XXX-XXX-XXXX |