July 1, 2024

**FILED VIA ECF**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
U.S. District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

        RE:    <u>Homyk v. ChemoCentryx, Inc.</u>, Master File No. 4:21-cv-03343-JST

Dear Judge Cisneros:

      The parties respectfully submit this joint letter in connection with Lead Plaintiff's request for an order to strike Defendants' June 18 and June 28, 2024 Supplemental Rule 26(a) disclosures. After meeting and conferring, the parties were unable to resolve the below dispute, and accordingly seek the Court's guidance. In accordance with Your Honor's Standing Order, the parties state that: fact discovery closes on August 7, 2024; expert discovery closes December 13, 2024; summary judgment motions are due March 20, 2025; and trial begins on September 22, 2025. The parties met and conferred by video conference on June 25, 2024.

**I.**      **LEAD PLAINTIFF'S POSITION**

      On June 18, 2024, just weeks before the Court-ordered deadline for fact discovery—and nearly a ***year and a half*** after fact discovery began and Rule 26(a) disclosures were due—Defendants attempted to "supplement" their Rule 26(a) disclosures with ***ten*** new witnesses, doubling the number of previously-identified witnesses, and an entirely new, expansive subject area of testimony: the "use of" ChemoCentryx's drug, avacopan. Then, two weeks later, on June 28, 2024—*after* Lead Plaintiff sent Defendants their portion of this dispute letter—Defendants attempted to add yet ***another*** witness.[1] Defendants' attempts to sandbag Plaintiff at the twilight of discovery are an improper violation of Rule 26 and should be stricken under Rule 37.

      Plaintiff has spent the last year and a half adducing copious discovery, including seeking and reviewing hundreds of thousands of documents from numerous parties and deposing multiple witnesses, in reliance on Defendants' April 2023 Rule 26(a) disclosures. If allowed to stand, Defendants' "Supplemental Disclosures" would require a re-do of that discovery, including seeking voluminous additional document discovery, re-deposing numerous third-party witnesses scattered across the country, deposing Defendants' newly-identified witnesses, and conducting follow-up discovery that flows from those depositions. As courts in this Circuit have repeatedly

---

[1] These ten new witnesses identified on June 18 are: (1) two scientific consultants, Christian Pagnoux and Ulrich Spechs, who have little, if any, first-hand knowledge of the events in litigation; (2) a paid ChemoCentryx spokesperson, Glen Massie; (3) five securities analyst firms; (4) Dalia Rayes, a former ChemoCentryx executive; and (5) MedPace, a clinical research organization that helped administer the ADVOCATE trial. Two weeks later, Defendants identified John Stone as testifying about "secondary endpoints," even though he did not attend a single FDA meeting at which those endpoints were discussed, produced a handful of documents in ***July 2023***, and is a correspondent on just 83 of the 120,000 emails Defendants produced.

held under similar circumstances, Defendants' supplemental disclosures must be stricken under Rule 37. *See, e.g.*, *Baird v. Blackrock Inst. Tr. Co.*, N.A., 330 F.R.D. 241, 243 (N.D. Cal. 2019) (striking 8 witnesses not disclosed until 1.5 months before the close of fact discovery); *Johnson v. Couturier*, 2009 WL 3169965, at *1 (E.D. Cal. Sept. 28, 2009) (striking witnesses not disclosed until 2 months before the close of fact discovery); *Spencer v. Peters*, 2012 WL 6608616, at *1 (W.D. Wash. Dec. 18, 2012) (striking 7 witnesses not disclosed until 1 month before close of fact discovery, given the "quantity and proximity of disclosure to the discovery cutoff date").

**Defendants' Disclosures Are "Untimely."** Rule 26 requires parties to identify the witnesses on which they may rely to support their case at the outset of discovery. While the Rule also allows for supplementation of those disclosures, it "does not create a 'loophole' for a party who wishes to revise its initial disclosures to its advantage." *Carrillo v. B & J Andrews Enters., LLC*, 2013 WL 420401, at *4 (D. Nev. Jan. 31, 2013). Instead, supplementation is allowed only where it is made (1) "in a timely manner"; and (2) "based on information that was ***not available at the time of the initial disclosure***." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009); Fed. R. Civ. P. 26(e).

This case has been pending for *three* years, and discovery has been ongoing for *a year-and-a-half*. The newly-disclosed witnesses were known to Defendants long before discovery began: they are executives of ChemoCentryx, individuals and entities involved in the ADVOCATE trial, and analysts reporting on the Company. There have been no developments in discovery that suddenly and surprisingly made either these witnesses or the broad newly-disclosed topic relevant; indeed, during the parties' meet-and-confer, Defendants could not identify any. Defendants asserted that *some* of their newly-disclosed witnesses (they did not say which) became relevant after Plaintiff cited evidence that ChemoCentryx manipulated ADVOCATE trial data in its class certification reply brief (even though Defendants do not confine their new disclosures to this discrete subject and no new witnesses have any ostensible connection to this issue). But that brief was filed *six months ago*. Even assuming Defendants' assertion is true, they do not, and cannot, offer any justification why they waited *six months* to disclose these witnesses.

**Defendants Did Not Otherwise "Make Known" Their Intent To Rely Upon Trial Testimony From These Witnesses.** Plaintiff had no reason to know that Defendants would rely on these witnesses at trial. *Shenwick v. Twitter, Inc*, 2021 WL 1232451, at *2 (N.D. Cal. Mar. 31, 2021) (Tigar, J.) (reliance on the subjects or witnesses at issue "must be in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient"). *None* of the ten witnesses have been deposed. Three of the witnesses—Pagnoux, Spechs, and Massie—are *nowhere* referenced in any of the deposition testimony nor in any of the hundreds of deposition exhibits in this case. Indeed, on the parties' meet and confer, Defendants acknowledged Massie "would not be on [Plaintiff's] radar." Two of the witnesses, Rayes and Stone, were referenced just a *single* time in passing in a *single* deposition: Rayes as the author of a single email, while a witness casually mentioned Stone's work unrelated to avacopan (Stone is not a correspondent on any deposition exhibits). And Defendants have not identified *whom* at the six newly-identified entities they intend to call at trial, stating instead an unidentified "research analyst *or* other designated representative."

**Defendants' Belated Disclosure Was Neither "Harmless" Nor "Substantially Justified."** Because Defendants' supplemental disclosures were untimely, Rule 37 requires the Court to strike them. Rule 37's exclusionary sanction is "self-executing and automatic," unless

Defendants can show that their lack of compliance with Rule 26 was harmless or substantially justified. *In re Twitter Inc. Sec. Litig.*, 2020 WL 485547, at *3 (N.D. Cal. Jan. 30, 2020) (Tigar, J.). Here, Defendants cannot meet their heavy burden to show either.

<u>First</u>, courts routinely hold that failure to supplement disclosures until weeks before the close of fact discovery is not harmless. *Plexxikon Inc. v. Novartis Pharms. Corp.*, 2019 WL 12038882, at *2 (N.D. Cal. Sept. 9, 2019) ("Courts in this District have precluded parties from using witnesses disclosed even before the close of fact discovery where their initial disclosures were not timely supplemented."); *Baird,* 330 F.R.D. at 247; *Spencer*, 2012 WL 6608616, at *1. Here, for the last **fourteen months**, Plaintiff conducted extensive discovery in reliance on Defendants' Rule 26 disclosures. Plaintiff (1) served 79 document requests, 8 interrogatories, and 73 requests for admission; (2) sought and obtained documents from 33 third parties; (3) developed a strategy for reviewing the voluminous documentary record in this case; (4) developed a deposition plan that fit within agreed upon deposition limits; and (5) deposed 9 witnesses, including numerous third-party witnesses located all across, and even outside the country, who were identified in Defendants' Rule 26 disclosures.

Allowing Defendants' belated "supplement" to stand would require Plaintiff to redo this discovery. Plaintiff would, among other things, need to seek and obtain new document discovery, including from multiple third parties not controlled by Defendants; depose not only Defendants' ten newly-disclosed witnesses, but also re-depose multiple third-party witnesses located all over the country about Defendants' newly disclosed topics; amend interrogatories; and issue new requests for admission. Plaintiff simply cannot do all this in the few remaining weeks of fact discovery, particularly as Defendants have so far declined Plaintiff's request for additional discovery related to these newly-disclosed topics and witnesses. *Finjan, Inc. Proofpoint, Inc.*, 2015 WL 9900617, at *3 (N.D. Cal. Oct. 26, 2015), at *3 (holding it was "not reasonable to expect plaintiff to divert time and resources to prepare for and take the depositions of [two witnesses], who were disclosed at the eleventh hour"). Even putting this aside, Plaintiff has exhausted 14 of its 15 allotted depositions and *cannot* depose the newly disclosed witnesses. *Reich v. Am. Fam. Mut. Ins. Co.*, 2015 WL 3619862, at *2 (D. Colo. June 9, 2015) (finding prejudice where a late disclosure foreclosed a party's ability to "make intelligent decisions regarding how [to] efficiently use the limited number of depositions permitted under the Rule 16 scheduling order.").[2]

<u>Second</u>, as discussed above, Defendants' belated disclosure was not justified. Defendants have not—and cannot—identify any legitimate reason why they could not have supplemented their disclosures months earlier, or, indeed, included these witnesses on their Rule 26 disclosures in April 2023. *See Baird*, 330 F.R.D. at 248 (finding untimely supplemental disclosure made near the end of discovery not justified when the supplementing party "could not explain why it could not have timely amended its disclosures" earlier); *Finjan*, 2015 WL 9900617, at *3 (same).

<u>Finally</u>, if the Court allows Defendants to "supplement" their Rule 26 disclosures at this

---

[2] Further expanding the already lengthy discovery schedule would not cure the harm Defendants have caused. *Shenwick*, 2021 WL 1232451, at *2 (further delay "would unreasonably burden Plaintiffs and potentially disrupt the parties' and the Court's schedule"). This is particularly true here where, after granting Defendants' motion for an extended discovery schedule, the Court warned that "the parties must take all necessary steps to conduct discovery" and the date of the trial "should be regarded as firm." ECF 148.

late stage, Plaintiff requests that the Court order Defendants, before the August 2, 2024 discovery deadline and at their costs, to (1) produce all documents related to the newly-disclosed witnesses and subject matter through the present; (2) make available for deposition the newly-identified witnesses; and (3) produce for deposition all of the previously-deposed witnesses about the newly-identified witnesses and subject matter.

## II. **DEFENDANTS' POSITION**

The purpose of Rule 26(a) Disclosures is to "encourage parties to try cases on the merits, not by surprise, and not by ambush." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014). As required by Rule 26, Defendants twice supplemented their Initial Disclosures in a timely manner, with nearly two months remaining in discovery, more than a year and a half before trial, and before Plaintiff updated its own discovery responses or pleadings to articulate its new case theories. Plaintiff appears to argue that it is permitted to invent new falsity theories mid-case, but Defendants cannot identify witnesses or evidence to rebut those theories. Far from being prejudiced, Plaintiff seeks to turn Defendants' compliance with the Rules into an unfair advantage for itself. Plaintiff's Motion to Strike should be denied.

Plaintiff complains about two categories of witnesses: (1) seven witnesses who have appeared throughout the discovery record and are well-known to Plaintiff; and (2) four witnesses who were added in direct response to Plaintiff's new theory of fraud. As to the former, there is no prejudice by adding a ChemoCentryx executive from whose files Defendants produced more than 66,000 documents, or the analyst firms and doctor that Plaintiff itself subpoenaed. As to the other four witnesses, they were added promptly following Plaintiff's new theory that Defendants "manipulated [ADVOCATE] trial data" ECF 101-3 at 13. This (false) theory of fraud appears nowhere in Plaintiff's 200-page Amended Complaint, Rule 26 Disclosures, or 300 pages of interrogatory responses (which Plaintiff has not yet supplemented). And when Defendants moved to strike this allegation, ECF 109, the Court chose "not [to] conside[r]" Plaintiff's new theory for class certification, but did not strike the allegation, ECF 131 at 14 n.2. Plaintiff now acts as if its new theory is fair game, and it has been the centerpiece of its recent depositions.

**Legal Standard.** Rule 26(a)(1)(A)(i) requires parties to disclose the "name" of witnesses and "subjects of . . . information" that the party "may use to support its claims or defenses." This obligation is ongoing, and a party "must supplement" its disclosures "in a timely manner if [it] learns that in some material respect the disclosure . . . is incomplete." Rule 26(e)(1)(A); *see Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1230 (N.D. Cal. 2019) ("[A]s theories mature and as the relevance of various items of evidence changes, [discovery must] be corrected or supplemented to reflect those changes."); 1993 Advisory Committee Note ("[A]s the issues in the pleadings are clarified, [parties] should supplement [their] disclosures[.]").

But this duty does not elevate "form over substance," *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 615, 617 (D. Nev. 2020), and a party need not serve updated disclosures if the supplemental information has previously "been made known . . . during the discovery process," Rule 26(e)(1)(A). While the supplementing party must do more than "poin[t] to places . . . where the information was mentioned in passing," *Twitter*, 2021 WL 1232451, at *2, the ultimate question is "whether the opposing party had meaningful notice to prepare its case." *V5*, 334 F.R.D. at 617-18; *see also Brandon v. Mare-Bear, Inc.*, 225 F.3d 661 (9th Cir. 2000) (describing the Rules' "principal goa[l]" of "preventing trial by ambush and surprise").

Even if a party's supplemented disclosures are neither "timely" nor "known," the Court may *still* allow supplemental disclosures if they are "harmless." Rule 37(c)(1); *California v. Ross*, 2019 WL 1975437, at *1-2 (N.D. Cal. Jan. 4, 2019) (allowing supplemental disclosure "within a month of trial" because ability to conduct discovery rendered disclosure harmless).[3]

**Dalia Rayes, the Analyst Firms, and Dr. Stone Were "Made Known" In Discovery and Supplementation Is Harmless.** Plaintiff disingenuously claims it lacked notice of seven witnesses with whom it is well-familiar. First, Plaintiff has known about Dalia Rayes since the start of discovery and affirmatively requested that Defendants produce documents from her custodial file. In an August 22, 2023 email, Plaintiff's counsel described Ms. Rayes as "patently relevant" and cited produced evidence in support. Defendants produced 66,926 of her documents spanning a quarter million pages (*i.e.*, 10% of the total discovery record). This is more than sufficient to provide meaningful notice such that Plaintiff could prepare its case. *See, e.g.*, *All Star Seed v. Nationwide Agribusiness Ins. Co.*, 2013 WL 1882260, at *10 (S.D. Cal. May 3, 2013) (no surprise when witness was disclosed on 35 emails spanning 234 pages).

Second, Plaintiff had notice of the significance of the five analyst firms for years. The Amended Complaint (filed in 2022) contains more than ninety statements of "analysts" covering ChemoCentryx in purported support of its allegations, and it specifically names four of the five at-issue analyst firms in its allegations. *See, e.g.*, ECF 47 ¶¶ 227-400. In fact, ***Plaintiff served subpoenas on each of the five analyst firms it seeks to strike from Defendants' disclosures***. Plaintiff has cited no case (and Defendants are aware of none) where a Court found a party to be "ambushed" by a witness it subpoenaed. *See Amadio v. Glenn*, 2011 WL 13227675, at *4 (E.D. Pa. Dec. 23, 2011) ("[Parties'] subpoena . . . undermin[ed] their claim of surprise or prejudice.").

The same is true of Dr. Stone, who Plaintiff subpoenaed on June 23, 2023. Plaintiff contends that Dr. Stone "[was] referenced just a *single* time in passing in a *single* deposition," but ignores that it had previously subpoenaed Dr. Stone, that Dr. Stone produced more than 100 documents, and that Dr. Stone is referenced in more than 1,000 *additional* documents in the discovery record. Just because Plaintiff's subpoena to Dr. Stone uncovered evidence favorable to Defendants does not mean that Plaintiff can claim "prejudice" by his supplemental disclosure.

**Medpace, Pagnoux, Specks, and Massie Rebut Plaintiff's New Theory.** In its Amended Complaint, motion to dismiss briefing, initial disclosures, and interrogatory responses, Plaintiff alleged that Defendants hid the FDA's negative feedback about ADVOCATE from investors. Then, in its class certification reply, Plaintiff added a new and baseless theory: that Defendants manipulated clinical trial data to trick the FDA into approving TAVNEOS®. As Defendants learned more about Plaintiff's theory through its deposition questions and discovery requests (and before Plaintiff supplemented its pleadings, disclosures, or discovery responses with this theory), and with almost two months remaining in discovery, Defendants supplemented their Rule 26 Disclosures to add witnesses they "may use to support [their] . . . defenses." FRCP 26(a)(1)(A)(i);

---

[3] Plaintiff cites a list of cases purportedly showing that parties may not supplement their disclosures near the end of discovery, but all are distinguishable. Defendants supplemented their disclosures with more time left in discovery than the parties in *all but one* case cited by Plaintiff. *E.g.*, *Reich*, 2015 WL 3619862, at *2 (disclosure two months *after* discovery closed); *Baird*, 330 F.R.D. 241, 243 (less than three weeks remaining); *Spencer*, 2012 WL 6608616, at *1-2 (less than a month remaining); *Johnson*, 2009 WL 3169965, at *1 (two months remaining). And in *Johnson*, the court allowed *eleven* new witnesses to be disclosed. 2009 WL 3169965, at *1-2.

26(e)(1).  This is *exactly* what the Rules require litigants to do.  Each of Defendants remaining four witnesses is necessary to debunk aspects of Plaintiff's new fraud theory:

1. <u>Medpace administered the ADVOCATE trial</u>.  Medpace was responsible for maintaining the integrity of ADVOCATE trial data and signed off on re-adjudication of certain patients. Plaintiff's recent letter to the FDA characterizes this as "manipulation of clinical trial data," and is thus equally directed to, and critical of, Medpace's conduct.

2. <u>Drs. Pagnoux and Specks treated patients during ADVOCATE</u>.  ADVOCATE was conducted by investigators, including Drs. Pagnoux and Specks.  Until Plaintiff's new position that data manipulation is at issue in this case, patient-level data from ADVOCATE (which Drs. Pagnoux and Specks are familiar with) was not relevant or in dispute.  *See id.*[4]

3. <u>Massie is a patient who used TAVNEOS®</u>.  Until Plaintiff's new position, there was no dispute that TAVNEOS® was an effective drug.  This Court previously ruled that Plaintiff could not "share [confidential material] with the FDA," ECF 136, but Plaintiff has renewed its request for FDA testimony "relating to [the] efficacy" of this drug since the Court's ruling.  Defendants intend to adduce evidence of its effectiveness and effects through Mr. Massie, a patient who has used TAVNEOS®.

**Plaintiff's "Alternative Relief" Is Unwarranted.**  Plaintiff alternatively requests that the Court require Defendants to produce even more documents and witnesses and re-open completed depositions.  This is an extraordinary and unnecessary remedy given that Plaintiff has already subpoenaed most of the supplemental witnesses.  Plaintiff has also not explained why it needs to re-open depositions—Plaintiff asked witnesses about Defendants' disclosures, avacopan's safety and efficacy, and the integrity of the ADVOCATE data.  Nor has Plaintiff explained why it needs additional depositions given that it has only taken 9 of its 15 allotted depositions and can depose whichever witnesses it wants.[5]  For these reasons, Plaintiff's relief should be denied.

*   *   *   *

The parties appreciate the Court's attention to this matter.

Respectfully submitted,

---

[4] Plaintiff was also "made known" of Medpace, Pagnoux, and Specks "during the discovery process."  Rule 26(e)(1)(A).  "Medpace" is referenced in 107,705 documents (24% of produced documents); Plaintiff subpoenaed Medpace and moved to compel additional productions.  *See in re Subpoena to Medpace, Inc.*, No. 1:23-cv-00739 (S.D. Ohio).  Pagnoux and Specks are each referenced in more than 10,000 produced documents, are publicly listed as ADVOCATE investigators, ECF 87-6 at 2, 6, and Plaintiff subpoenaed multiple other investigators.

[5] Nor has Plaintiff used its noticed depositions efficiently.  For instance, Plaintiff elected to depose four witnesses—Dr. Richard Glassock, Dr. Willis Maddrey, Dr. David Goodkin, and Dr. Chao Wang—despite those witnesses appearing on neither party's Rule 26 Disclosures.  Plaintiff is free to use its 15 depositions however it chooses, but cannot later complain about its choices.

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**

 */s/ Abe Alexander*
Salvatore Graziano (admitted *pro hac vice*)
(salvatore@blbglaw.com)
Abe Alexander (admitted *pro hac vice*)
(abe.alexander@blbglaw.com)
Stephen Boscolo (admitted *pro hac vice*)
(stephen.boscolo@blbglaw.com)
1251 Avenue of the Americas
New York, New York  10020
Tel: (212) 554-1400
Fax: (212) 554-1444

-and-

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
Lauren M. Cruz (Bar No. 299964)
(lauren.cruz@blbglaw.com)
Caitlin C. Bozman (Bar No. 343721)
(caitlin.bozman@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, California  90067
Tel: (310) 819-3470

*Lead Counsel for Lead Plaintiff Indiana
Public Retirement System and the Class*


**LATHAM & WATKINS LLP**

By: */s/ Colleen C. Smith*
Colleen C. Smith
*Colleen.Smith@lw.com*
12670 High Bluff Drive
San Diego, California 92130
T: (858) 523-5400

Meryn C. N. Grant (Bar No. 291315)
*Meryn.Grant@lw.com*
10250 Constellation Blvd Suite 1100
Century City, CA 90067
T: (424) 653-5500

Michele D. Johnson (Bar No. 198298)
*Michele.Johnson@lw.com*

650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
T: (714) 540-1235 / F: (714) 755-8290

Susan E. Engel (*pro hac vice*)
*Susan.Engel@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
T: (202) 637-2200

*Attorneys for Defendants ChemoCentryx, Inc.
and Thomas J. Schall*