July 19, 2024

**FILED VIA ECF**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
U.S. District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

            RE:     <u>Homyk v. ChemoCentryx, Inc.</u>, Master File No. 4:21-cv-03343-JST

Dear Judge Cisneros:

     In accordance with Your Honor's July 16, 2024, Order (the "Order" (ECF No. 157)), Lead Plaintiff Indiana Public Retirement System ("Lead Plaintiff") respectfully submits this supplemental letter brief in further support of its motion to strike Defendants' June 18 and June 28, 2024 Supplemental Rule 26(a) disclosures.

### I. Relevant Background

     As explained in Lead Plaintiff's portion of the parties' joint letter (ECF. No 156), just weeks before the Court-ordered deadline for fact discovery—and nearly a ***year and a half*** after fact discovery began and Rule 26(a) disclosures were due—Defendants attempted to "supplement" their Rule 26(a) disclosures with ***eleven*** new witnesses, more than ***doubling*** the number of previously identified witnesses that Defendants intend to call at trial, and adding an entirely new, expansive subject area of trial testimony: the "use of" ChemoCentryx's drug, TAVNEOS, which entered the market ***after*** the Class Period. By waiting until the twilight of discovery to identify these new potential trial witnesses and new subject of trial testimony, Defendants have deprived Lead Plaintiff of the ability to (i) take the depositions of the eleven newly-identified witnesses before the August 7, 2024 fact discovery deadline; (ii) re-depose the fifteen previously-deposed lay witnesses about these newly-identified trial witnesses and new topic of trial testimony; and (iii) obtain additional documents about these newly-identified trial witnesses and new topic for trial testimony, which significantly changes the relevant period for discovery.

     Courts in the Ninth Circuit and elsewhere regularly strike supplemental disclosures under similar circumstances. *See, e.g.*, *Baird v. Blackrock Inst. Tr. Co.*, 330 F.R.D. 241, 243 (N.D. Cal. 2019) (striking disclosures made 1.5 months before close of discovery); *Spencer v. Peters*, 2012 WL 6608616, at *1 (W.D. Wash. Dec. 18, 2012) (striking disclosures one month before close of discovery); *Johnson v. Couturier*, 2009 WL 3169965, at *1 (E.D. Cal. Sept. 28, 2009) (striking disclosures two months before the close of fact discovery).[1]

---

[1] Defendants incorrectly claimed (*see* ECF 156 at 5 n.3) the supplemental disclosures at issue in *Baird* were made with "less than three weeks remaining" in discovery. In truth, those witnesses were first disclosed a month-and-a-half before discovery cut off, just as here. 330 F.R.D. at 243 ("Plaintiffs seek to strike ten individuals that BlackRock did not disclose until December 21, 2018.")

The Honorable Lisa J. Cisneros
Page 2 of 6

As the Ninth Circuit has explained, "[a]n adverse party should *not* have to guess which undisclosed witnesses may be called to testify." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) (emphasis added). Indeed, "[w]hen a party discloses witnesses on their Rule 26(a)(1) disclosure, it signals that a party may seek to call these witnesses in their case-in-chief at trial. That, in turn, alerts the opposing party that deposing those witnesses may be necessary in order to learn the substance of their testimony, and to ensure that they do not hear the testimony for the first time at trial." *Doe 1 v. City of Chicago*, 2019 WL 5290899, at *8 (N.D. Ill. Oct. 18, 2019). Here, Defendants' last-minute attempt at a re-do of their Rule 26 disclosures, if permitted, deprives Lead Plaintiff the opportunity to conduct necessary discovery. Additionally, allowing Defendants to re-do fact discovery would upend the entire schedule in a case that has been pending for three years and for which Judge Tigar has set a firm trial date, with clear pre-trial deadlines, after granting Defendants' motion for an extended fact discovery period. *See* ECF 148.

## II. Defendants Did Not Otherwise "Make Known" That They May Use the Newly Identified Witnesses to Support Their Defenses

As the Court noted in the Order, Defendants "failed to disclose the eleven witnesses at issue until less than two months before the fact discovery cutoff." ECF. No. 157 at 2. Defendants have offered no justification for this failure—and there is none.

*First*, Defendants incorrectly assert that Lead Plaintiff's issuance of document subpoenas to some of Defendants' newly-disclosed witnesses satisfies *their* disclosure obligations under Rule 26(a). It does not. This case is a large, complex securities class action, involving scores of ChemoCentryx employees, former employees, consultants, service providers, regulators, medical journals, clinical trial sites, market commentators, and other third parties connected in some form or fashion to the years' long clinical trial and regulatory process at issue here. As is typical in cases of this size, Lead Plaintiff issued dozens of document subpoenas to third parties –*50* to be exact – in order to explore their connection to the facts at issue in this case, concluding in the vast majority of cases that the strength of that connection did not justify further discovery.

Lead Plaintiff's mere issuance of a document subpoena to a third party for purposes of exploring their connection to this case cannot, and does not, put Lead Plaintiff on notice that **Defendants** contemplate relying on that subpoenaed third party "to support *its* claims or defenses," as Rule 26 requires. As Judge Tigar has explained, knowing an individual exists is not the same as knowing your adversary intends to rely on them at trial; as such, disclosure "must be in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient." *Shenwick v. Twitter, Inc*, 2021 WL 1232451, at *2 (N.D. Cal. Mar. 31, 2021) (citation omitted). Courts across the country are in accord. *See, e.g.*, *Doe 1*, 2019 WL 5290899, at *7-8 (finding a witness was not "made known" to defendants even though, as stated in the briefing (ECF No. 276), defendants issued subpoenas to witness); *Superior Consulting Servs., Inc. v. Shaklee Corp.*, 2018 WL 1474184, at *2 (M.D. Fla. Mar. 7, 2018) (Rule 26 obligations not excused unless discovery "made clear . . . not just that the person existed and had information but also that the party intended to use that person to support its claims" (quotations omitted)); *Est. of McDermed v. Ford Motor Co.*, 2016 WL 1298096, at *5 (D. Kan. Apr. 1, 2016)

("[T]he fact the opposing party knows of an individual does not mean that party would necessarily know the other party intends to rely upon that individual as one of its witnesses.").

As an initial matter, Defendants' "subpoena" argument ignores that Lead Plaintiff has *never* served subpoenas to *three of Defendants' five newly identified individual witnesses*—Ulrich Specks, Christian Pagnoux, and Glen Massie, individuals with virtually no connection to the facts at issue in this case, as their conspicuous absence from discovery to-date makes clear.[2] And contrary to Defendants' contention that these witnesses were offered to rebut a "new" theory of data manipulation, this very same data manipulation was covered extensively in depositions beginning with the December 1, 2023 deposition of Dr. Richard Glassock, and in briefing no later than the class certification reply brief, filed on January 23, 2024. ECF No. 102. Indeed, on January 30, 2024—*nearly 7 months ago*—Defendants expressly recognized in their class certification briefing Lead Plaintiffs' claim that ChemoCentryx "manipulated data about avacopan's efficacy." ECF No. 109 at 1, 2. Additionally, and further exposing the pretextual nature of their argument, Defendants designated these individuals to testify on topics that have nothing to do with ChemoCentryx's data manipulation—including, among others, "use of" TAVNEOS.

Defendants' "subpoena" argument fares no better as to the two remaining individuals Lead Plaintiff previously subpoenaed at the very outset of discovery—John Stone (subpoena issued June 26, 2023; Defendants had not even produced documents) and Dalia Rayes (subpoena issued October 21, 2023; document production was ongoing and no depositions had occurred). These two individuals were among *50* potential witnesses that Lead Plaintiff served with document subpoenas in this case. That Lead Plaintiff served these (and 48 other) witnesses with subpoenas in no way reflects any knowledge that Defendants would rely upon them at trial or otherwise. Indeed, Defendants did not supplement their disclosures to add Dr. Stone until June 28, 2024—more than a *full year* after Lead Plaintiff served its subpoena to him, and did not add Rayes until June 18, 2024—more than *eight months* after Lead Plaintiff served its subpoena to her.

Lead Plaintiff had no reason to know (or believe) that Defendants would, nearly a year later, supplement their Rule 26 disclosures to identify Dr. Stone (a paid ChemoCentryx consultant) and Dalia Rayes (a former ChemoCentryx employee) as potential trial witnesses to support their defenses. Indeed, (i) *no* party has ever deposed or sought to depose Dr. Stone or Ms. Rayes; (ii) Ms. Rayes and Dr. Stone were mentioned just four times in the 18 depositions conducted to-date, and both were referenced only in passing; (iii) *none* of the more than *380* exhibits introduced at these depositions were authored by either witness (including over 100 exhibits introduced by Defendants), apart from two email chains that included Ms. Rayes as a correspondent; (iv) *none* of the 380 deposition exhibits were from Dr. Stone's limited document production, nor was Dr. Stone included as a correspondent on any email used as a deposition exhibit; (v) Dr. Stone produced a mere *75* documents in response to the subpoena, and Ms. Rayes did not produce *any* documents in response to the subpoena; (vi) of the 75 documents Dr. Stone produced, there were only *15* emails dated within the class period, and those were only dated in the last 1.5 months of it, and (vii) no party has ever mentioned or used Dr. Stone or Ms. Rayes, or any of their documents,

---

[2] That these individuals, all of whom are also represented by ChemoCentryx's counsel, are unconnected to the facts of this case raises the prospect that they will be mere mouthpieces for Defendants, making Plaintiff's inability to obtain discovery even more prejudicial.

The Honorable Lisa J. Cisneros
Page 4 of 6

in *any* brief filed in the Court (other than this one).  Here, Lead Plaintiff was left "to guess which undisclosed witnesses may be called to testify,"—the exact type of "gamesmanship" that the Ninth Circuit has "warned litigants not to indulge in."  *Ollier*, 768 F.3d at 863 (citation omitted).

While Defendants suggest that Dr. Stone's production of 75 documents (almost a year ago) was substantial, this could not be further from the truth.  Over *half a million documents* – comprising more than *ten million pages* – have been produced in this litigation. Dr. Stone's production of 75 documents is a very small drop in a very large bucket.  What's more, as noted above, only *15* emails produced by Dr. Stone are even dated within the Class Period and even they are immaterial to this case.  After reviewing this production, Lead Plaintiff concluded Dr. Stone's connection to this case was tenuous at best – a conclusion borne out by the next year of discovery, over which no party sought additional discovery from Dr. Stone, no documents he produced (or even authored) were introduced as a deposition exhibit, and his name was mentioned only once in passing at a single deposition. Dr. Stone, who, like the other newly disclosed individuals, is represented by counsel for ChemoCentryx, appears to be nothing more than a mouthpiece for Defendants' views, making Defendants' belated disclosure all the more prejudicial.

*Second*, Defendants erroneously assert that Defendants somehow "made known" that they would use Ms. Rayes as a potential trial witness to support their defenses because she was a document custodian.  But the document production in this case included *31* document custodians from ChemoCentryx, including 17 from the Company and at least an additional 14 custodians from third-party consulting firms hired by ChemoCentryx.  Nothing about the fact that Ms. Rayes was among these 31 document custodians made known that Defendants contemplated relying on her (as opposed to any of the other 30 custodians) as a trial witness to support their defenses. *See Pac-W. Distrib. NV LLC v. AFAB Indus. Servs., Inc.*, 2023 WL 3952347, at *2 (E.D. Pa. June 12, 2023) ("Reference to a witness in discovery documents, interrogatories, or depositions or even knowledge that someone has relevant information is insufficient to provide notice that the person might be called as a witness by the opposing party.") (citation omitted).  This is particularly so because *Lead Plaintiff*—not Defendants—proposed, at the outset of the case, that Rayes be added as a document custodian (over Defendants' initial objection); just *two* of the 380 deposition exhibits introduced in this case were from Rayes's custodial file, and *none* were authored by her.

*Third*, Defendants incorrectly assert that Lead Plaintiff somehow knew that Defendants intended to call at trial the belatedly disclosed five (of the *22* total) analyst firms that cover ChemoCentryx and Medpace because each were subpoenaed and because reports issued by some (though not all) of these five firms were referenced (among others) in the Complaint.  But Lead Plaintiff had no way of divining which, if any, of the *22* analyst firms that cover ChemoCentryx Defendants intend to rely on.  More fundamentally, while analyst *reports* are often referenced in securities fraud complaints, analysts themselves rarely testify in such cases (and are often excluded at trial) because what matters is what the published analyst report communicates to investors—*not* the analyst's unpublished, potentially anecdotal views.  Accordingly, references to analyst *reports* in the Complaint did not put Lead Plaintiff on notice that Defendants might seek (irrelevant) testimony from analysts themselves. Likewise, Lead Plaintiff issued a document subpoena to Medpace on June 6, 2023, before Defendants produced any documents or any depositions occurred. Lead Plaintiff had no way of knowing that—after *not* including Medpace on its Rule 26 disclosures for nearly a year and a half—Defendants would have a last-minute change of heart.

What's more, Defendants' belated supplemental disclosures of these analyst firms and Medpace Inc. contravenes Rule 26, which required Defendants to disclose "the identity of '*individuals*' who may be used as witnesses, *not* companies." *Marksberry v. FCA US LLC*, 2021 WL 2407579, at *2 (D. Kan. June 11, 2021) (emphasis added); *see Pac-W. Distrib.*, 2023 WL 3952347, at *3 (granting motion to strike even though the witnesses' *company* was subpoenaed because subpoena "did not put [plaintiff] on notice that any other officers could be called as trial witnesses"). Defendants failed to identify *any* individual from *any* of these firms. Instead, Defendants simply identified the entities, noting further that they may call one of their many "research analyst[s] or other designated representative." As a result, *even now*, Lead Plaintiff does not know which individuals from the analyst firms or Medpace Defendants may use as at trial.

Additionally, Defendants did not issue document subpoenas to the five newly-added analyst firms until April 24, 2024—over a year after start of fact discovery. And Plaintiff issued subpoenas to those firms *only* afterwards—on April 30, May 1, and May 15, 2024—because Defendants' subpoenas were incomplete. Because Defendants dragged their feet in issuing document subpoenas to these entities, none of the documents sought from these belatedly analyst firms are expected to be produced by the close of fact discovery.

*Fourth*, Defendants' assertion that mere agreement to collect documents from corporate employees in a large, complex securities class action or the issuance of a document subpoena to any of dozens of third parties at the outset of discovery is sufficient to discharge their Rule 26 obligations is unworkable. If accepted, Defendants' argument would create enormous inefficiencies in complex litigation, including exceedingly lengthy discovery periods to accommodate dozens of depositions, many of which would ultimately be wasteful. As discussed, *31* custodians have produced documents in this case, and Plaintiff issued *50* document subpoenas in this case. Thus, if Defendants' argument were accepted, Plaintiff would have to take *at least* 81 depositions to be equipped to examine Defendants' potential witnesses at trial. Moreover, accepting Defendants' argument would encourage litigants to provide a barebones initial disclosure and, at the end of discovery, select any additional witnesses it chose from an extensive buffet of document custodians and subpoena targets (just as ChemoCentryx hopes to do here). This would subvert the purpose of Rule 26(a): to allow a party to discover its *opponent's* case—and render initial disclosures meaningless. That is particularly true here where Defendants supplemented their disclosures only after Lead Plaintiff noticed all 15 of its depositions (having already expended 8 depositions on every witness identified in Defendants' original initial disclosures, as well as taking the depositions of individuals on whom it will affirmatively rely).

*Finally*, Defendants' own argument undercuts their position. If Lead Plaintiff should have somehow divined precisely who, among the multitude of parties subpoenaed or added as documents custodians at the outset of discovery, Defendants would rely on to support their defenses at trial, then it should have been *far more* apparent to Defendants that they might rely on those individuals. What possible justification can Defendants have for waiting *nearly a year and a half* – until the very close of discovery – to supplement their Rule 26(a) disclosures?

Plaintiff respectfully requests that the Court strike the newly disclosed witnesses or, in the alternative, order production of the discovery sought in Lead Plaintiff's joint letter with costs.

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**

 */s/ Abe Alexander*
Salvatore Graziano (admitted *pro hac vice*)
(salvatore@blbglaw.com)
Abe Alexander (admitted *pro hac vice*)
(abe.alexander@blbglaw.com)
Stephen Boscolo (admitted *pro hac vice*)
(stephen.boscolo@blbglaw.com)
1251 Avenue of the Americas
New York, New York  10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*-and-*

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
Lauren M. Cruz (Bar No. 299964)
(lauren.cruz@blbglaw.com)
Caitlin C. Bozman (Bar No. 343721)
(caitlin.bozman@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, California  90067
Tel: (310) 819-3470

*Lead Counsel for Lead Plaintiff Indiana
Public Retirement System and the Class*