July 23, 2024

**FILED VIA ECF**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
U.S. District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      RE:    <u>Homyk v. ChemoCentryx, Inc.</u>, Master File No. 4:21-cv-03343-JST

Dear Judge Cisneros:

    In accordance with the July 16, 2024 Order (the "Order"), ECF No. 157, Defendants ChemoCentryx, Inc. and Thomas J. Schall (collectively, "Defendants") respectfully submit this supplemental letter brief in response to Plaintiff's motion to strike Defendants' supplemental initial disclosures, ECF No. 156 ("Mot."), and supplemental brief, ECF No. 158 ("Supp. Br.").

**I.    INTRODUCTION**

    Plaintiff misreads Rule 26 entirely. Rule 26 requires that parties disclose "individual[s] likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Those "initial disclosures" are exchanged at the very beginning of discovery, before written discovery, documents, or depositions. The Federal Rules contemplate that during discovery, parties will inevitably learn additional information that supports supplemental disclosures. *See* Rule 26(e)(1)(A). The purpose of Rule 26 is not to require parties to "lock in" trial witness lists before discovery begins (or even long before it ends), but rather to remove surprises at trial. *E.g.*, *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 615, 617 (D. Nev. 2020) (denying motion to strike supplemental disclosure: "[The] supplemental disclosure requirements eliminate surprise and trial by ambush").

    On June 18, 2024, with seven weeks remaining in fact discovery and more than a year before trial, Defendants voluntarily updated their initial disclosures to identify additional potential witnesses. Given Plaintiff's familiarity with these witnesses and their relevance to the case (Plaintiff had already subpoenaed all but three of them), Plaintiff has no basis to claim "surprise" or "ambush." Plaintiff is thus left trying to contort Rule 26 into something it is not by relying upon inapposite case law. Unlike the cases on which Plaintiff relies, this is *not* a dispute over new witnesses disclosed on the eve of trial or new affidavits appearing at summary judgment. Supp. Br. at 2–5 (citing exclusively to cases involving supplemental disclosures made after close of discovery). Defendants instead made supplemental Rule 26 disclosures *during* fact discovery, just as the Rules contemplate and allow. *See HM Elecs., Inc. v. R.F. Techs., Inc*, 2014 WL 7183493, at *19 (S.D. Cal. Dec. 15, 2014) (denying motion to strike supplemental disclosures made during fact discovery: "[T]he cases Defendant relies on are inapposite. In each of them, the supplemental witness disclosures were made *after* the close of discovery.") (emphasis in original).

    Plaintiff's motion is a transparent attempt to exclude evidence that undermines its claims. The Motion to Strike should be denied.

II.     ARGUMENT

    A.     **Defendants Did Not Issue Earlier Supplemental Disclosures Because These Witnesses—Whose Significance Grew as Plaintiff's Case Evolved—Were Made Known to Plaintiff During Discovery**

The Court requested that Defendants "explain why they failed to disclose the eleven witnesses at issue until less than two months before the fact discovery cutoff," in light of Defendants' argument that the witnesses were "'made known' to Lead Plaintiff through the parties exchanging hundreds if not thousands of documents . . . during fact discovery." ECF 157 at 2.

Defendants' disclosures complied with Rules 26(a) and (e) because they were timely responses to Plaintiff's evolving case theories and unnecessary given these witnesses had been made known to Plaintiff during discovery. The choice to issue supplemental disclosures was a "belt & suspenders" decision to provide Plaintiff with more notice than required by the Federal Rules, not less. While the discovery record is filled with documents produced by or referencing all but one of the disclosed witnesses (Glen Massie), even Mr. Massie's relevance to this case is apparent. Mr. Massie spoke during the May 2021 Advisory Committee Meeting ("AdCom") that prompted the filing of this lawsuit, and his information is relevant to rebut Plaintiff's "data manipulation" theory that entered the case mid-discovery. Trial is not scheduled until September 2025, and witness lists are not due for another thirteen months. Given how aggressively Plaintiff had litigated discovery issues, Defendants decided to disclose extra information—even though not required—to avoid any conceivable claim of prejudice or surprise.

Plaintiff's authority demonstrates that its Motion lacks merit. Plaintiff's argument relies exclusively on cases discussing supplemental disclosures made in the lead up to trial[1] or in connection with summary judgment declarations.[2] Supp. Br. at 2–5. For example, Plaintiff relies on *Pac-West*, a case where the supplementing party "identified three new witnesses" with information about "23 topics" "just days before [the] final pretrial conference." *Pac-West*, 2023 WL 3952347, at *1. As explained by the Southern District, cases involving disclosures "after the close of discovery" are "inapposite" when determining whether supplementation during discovery is warranted. *See HM Elecs.*, 2014 WL 7183493, at *19.[3] This is because parties with remaining time in fact discovery can (and often do) seek discovery from the supplemental witnesses. *Id.*

---

[1] *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014); *Shenwick v. Twitter, Inc*, 2021 WL 1232451, at *2 (N.D. Cal. Mar. 31, 2021); *Pac-W. Distrib. NV LLC v. AFAB Indus. Servs.*, Inc., 2023 WL 3952347, at *2 (E.D. Pa. June 12, 2023).

[2] *Doe 1 v. City of Chicago*, 2019 WL 5290899, at *8 (N.D. Ill. Oct. 18, 2019); *Marksberry v. FCA US LLC*, 2021 WL 2407579, at *2 (D. Kan. June 11, 2021); *Est. of McDermed v. Ford Motor Co.*, 2016 WL 1298096, at *5 (D. Kan. Apr. 1, 2016); *Superior Consulting Servs., Inc. v. Shaklee Corp.*, 2018 WL 1474184, at *2 (M.D. Fla. Mar. 7, 2018).

[3] Plaintiff's Supplemental Brief references only three cases where a party supplemented its disclosure during fact discovery, exclusively in the "Background" section of its brief. Supp. Br. at 1. Although Plaintiff claims these cases demonstrate courts "regularly" strike supplemental disclosures, these courts actually allowed the majority of the supplemental disclosures to stand. *Baird v. Blackrock Inst. Tr. Co.*, 330 F.R.D. 241, 243 (N.D. Cal. 2019) (twenty-nine supplemental

B. The Individuals and Entities Likely to Have Discoverable Information

There are eleven individuals and entities whom Defendants identified in their supplemental disclosures: (i) the five analyst firms; (ii) Dr. Stone; (iii) Dalia Rayes; (iv) Medpace; (v) Drs. Specks and Pagnoux; and (vi) Glen Massie.

1. The Five Analyst Firms

Defendants served subpoenas to the five analyst firms on April 24, 2024, with four months left in fact discovery. Over the next few weeks, Plaintiff served its own subpoenas on these five firms. By June 18, 2024, however, none of the five analyst firms had produced their responsive documents. Rather than wait for these firms to start productions, Defendants formally updated their Rule 26 disclosures to indicate that each of these firms was "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." Rule 26(a)(1)(A). Plaintiff already knew that Defendants believed these firms were "likely to have discoverable information"—indeed, the entire purpose of a non-party subpoena is to obtain "discoverable information" to support the subpoenaing party's "claims or defenses." *See id.*

Plaintiff's arguments about the analyst firms are unavailing. *First*, Plaintiff argues that a total of twenty-two analyst firms covered ChemoCentryx during the Class Period, and it "had no way of divining which . . . of the 22 analyst firms that cover ChemoCentryx Defendants intend to rely on." Supp. Br. at 4. This is a red herring; Defendants are relying upon only the five analyst firms that they disclosed, that they subpoenaed, that are referenced in Plaintiff's Complaint, and that Plaintiff itself subpoenaed. The Court is not being asked to determine whether Plaintiff was "made known" of the seventeen other firms.[4] *Second*, Plaintiff argues that analysts are "often excluded at trial" because their testimony is "irrelevant." Supp. Br. at 4. Plaintiff is once again conflating initial disclosures with trial witness lists (and similarly conflating its motion to strike with a motion *in limine*). Disclosure of an individual pursuant to Rule 26(a) is not conditioned on their information being admissible at trial which, of course, is impossible to know while discovery is ongoing. And even if admissibility were an issue now, it is hard to see how stock market analysts covering ChemoCentryx could be deemed "irrelevant" to a case about what investors knew about the company. *Third*, Plaintiff chastises Defendants for disclosing the names of these firms instead

---

individuals; only nine stricken); *Spencer v. Peters*, 2012 WL 6608616, at *1 (W.D. Wash. Dec. 18, 2012) (twelve supplemental individuals; only seven stricken); *Johnson v. Couturier*, 2009 WL 3169965, at *1 (E.D. Cal. Sept. 28, 2009) (thirteen supplemental individuals; only two stricken).

[4] Plaintiff also suggests the Court may strike witnesses that have previously been subpoenaed, but its reliance on a single, inapposite, out-of-circuit case only demonstrates that Defendants' disclosures should stand. *See* Supp. Br. at 2 (citing *Doe 1*, 2019 WL 5290899, at *7). *Doe 1* involved a disclosure made four months after discovery that identified two parties' spouses as witnesses. 2019 WL 5290899, at *7. The court struck the supplemental disclosure (despite prior subpoenas to the spouses) because, "[the supplementing parties] had indicated in discovery responses that [their spouses] did not have responsive information that was not protected by marital privilege." *Id.* In other words, the supplementing party had stonewalled discovery from two sources, then reversed course after discovery closed. Nothing remotely similar has happened here—Defendants have not prevented Plaintiff from seeking discovery into any of the at-issue firms or individuals. *See also Amadio v. Glenn*, 2011 WL 13227675, at *4 (E.D. Pa. Dec. 23, 2011) ("[Parties'] subpoena . . . undermin[ed] their claim of surprise or prejudice.").

of "individuals who may be used as witnesses," Supp. Br. at 5, ignoring that Plaintiff's own disclosure similarly lists entity names instead of individuals. In any event, neither Rule 26(a) nor (e) requires Defendants to know the inner workings of non-parties prior to receiving their document productions. Defendants can, and intend to, further supplement their disclosures as they learn the identities of relevant individuals at these firms. *Finally*, Plaintiff states that Defendants "did not issue [these] document subpoenas . . . [until] a year after [the] start of fact discovery," Supp. Br. at 5, while ignoring that the "methods of discovery may be used in any sequence," Rule 26(d)(3)(A). Nothing about these subpoenas, or Defendants' decision to formally disclose the identity of these witnesses, is improper.

### 2. Five Other Individuals and One Entity

Plaintiff's objections as to the other six supplemental disclosures (five individuals and one entity) are similarly misguided. Defendants will address each in turn. Dr. Stone is a witness subpoenaed by Plaintiff in June 2023—who produced documents in response to Plaintiff's subpoena. Plaintiff's subpoena yielded documents helpful to Defendants' position regarding ADVOCATE's secondary endpoints and, in particular, the glucocorticoid toxicity index ("GTI"). Dr. Stone is deeply familiar with the GTI—which he helped develop—and Plaintiff is therefore hunting for reasons to exclude Dr. Stone's evidence. But no valid basis exists. Plaintiff was "made known" of Dr. Stone's identity "during discovery." Rule 26(e)(1)(A). Still, Defendants chose to formally disclose what Plaintiff already knew—that Dr. Stone was "likely to have discoverable information," and that Defendants may use his information to "support [their] claims or defenses." This is exactly how discovery is supposed to function. Parties serve subpoenas, and sometimes uncover facts that help an adversary. But such facts are not a reason to exclude evidence, *Boyd v. City & Cty. of San Fran.*, 576 F.3d 938, 948 (9th Cir. 2009), and are certainly not a reason to strike a witness entirely. This is especially so when Plaintiff had more than a year to attempt to rehabilitate any damage done to its case from Dr. Stone's document production, and when it had nearly two months to do the same after Defendants' formal disclosure.

Ms. Rayes was likewise well known to Plaintiff prior to Defendants' supplementation of their Rule 26 Disclosures. Plaintiff does not dispute that it knew about Ms. Rayes since the start of fact discovery, that it specifically requested documents from her custodial file, or that Ms. Rayes' documents make up approximately 10% of the discovery record. Ms. Rayes was tasked with commercializing ChemoCentryx's products, and Plaintiff has put that topic into dispute by seeking discovery into contemplated acquisitions of ChemoCentryx and arguing that ChemoCentryx rushed to sell itself before fraud could be revealed. Ms. Rayes was involved in market projections and may be necessary to authenticate documents and provide testimony about ChemoCentryx's views on its commercial prospects that are contrary to Plaintiff's made-up narrative. Plaintiff already requested her documents and conducted discovery about topics Ms. Rayes worked on, so there can be no surprise that Ms. Rayes has information Defendants may use.

Medpace was the organization responsible for conducting the ADVOCATE Phase III trial. It provided ChemoCentryx with a broad array of services ranging from investigator training to clinical monitoring to data management. Though the Complaint does not contain specific allegations about Medpace, Plaintiff knew Medpace was "likely to have discoverable information," as it subpoenaed Medpace at the outset of discovery, in June 2023. As stated in Defendants' portion of the Joint Letter Brief (and as conceded in Plaintiff's Supplemental Brief) Plaintiff's case theory changed in the middle of discovery. Ltr. Br. at 4; Supp. Br. at 3. During the deposition of Dr. Richard Glassock, Plaintiff began accusing Defendants of manipulating data

about avacopan's efficacy to trick the FDA into approving an ineffective drug. This theory grew in significance and scope in depositions that followed during the discovery period. In direct response to this new theory, Defendants identified four witnesses, including Medpace. Despite Medpace being "made known" to Plaintiffs during discovery through a combination of Plaintiff's own subpoena to Medpace, its own motion to compel Medpace's production, and Medpace's document production in mid-July 2024, Defendants nonetheless supplemented their Rule 26 disclosures to formally identify Medpace (before Medpace even finished its document production).

For the same reason Defendants did not disclose Medpace at the start of discovery (the allegations implicating its knowledge were not raised in the Complaint), Defendants could not have known that Dr. Specks and Dr. Pagnoux would become relevant by virtue of Plaintiff's shifting case theories. Drs. Pagnoux and Specks were investigators during the ADVOCATE trial. They saw patients with ANCA-associated vasculitis, administered avacopan or placebo medications based on the ADVOCATE trial protocol, and evaluated patients' symptoms based on a scoring system disclosed in the trial protocol. Their knowledge about patient-level data and how the trial was conducted by its investigators is now relevant to establish that there was no "manipulation" of clinical data. And of the ADVOCATE investigators, Defendants disclosed two that had been referenced more than 10,000 times each in the discovery record. Plaintiff cannot have it both ways—simultaneously making up new unpled theories, but then prohibiting Defendants from developing their own evidence to rebut these false allegations.

The final individual with information relevant to Plaintiff's new theory is Glen Massie, a patient who used TAVNEOS®. Mr. Massie is a patient advocate who spoke during the AdCom that prompted this lawsuit. *See* ECF 87-30 (AdCom Tr.) 197:4–200:14. Plaintiff argues that Mr. Massie and his use of TAVNEOS® have "nothing to do with . . . data manipulation," Supp. Br. at 3, but this argument fails under any scrutiny. Plaintiff's data manipulation theory rests on an unsound premise that ChemoCentryx tricked the FDA into approving an ineffective drug. By disclosing Mr. Massie, Defendants are informing Plaintiff that they may use information about how he used TAVNEOS® to demonstrate it is an effective, life-saving drug. Plaintiff's desire to keep favorable information out of the record does not warrant striking Mr. Massie's disclosure.

### C.  There Has Been No Harm to Plaintiff

When Plaintiff filed its Joint Discovery Letter, it argued that "the few weeks remaining of fact discovery" were not sufficient to "seek and obtain new document discovery." Ltr. at 3. Plaintiff's assertion has proven false. In the time since Defendants supplemented their disclosures, Plaintiff issued six new subpoenas to third parties who do not appear on either party's Rule 26 disclosures. Plaintiff could have easily served subpoenas (or additional subpoenas) to the individuals included on Defendants' supplemental disclosures, but it chose not to. *See California v. Ross*, 2019 WL 1975437, at *2 (N.D. Cal. Jan. 4, 2019) (allowing supplemental disclosures made 26 days *before trial* and not extending case deadlines because party had sufficient "time to engage in . . . discovery" even though it ultimately "declined to depose [the new witnesses] or seek discovery"); *see also* Rule 37(c)(1) (no exclusions if belated disclosure is "harmless"). Any failures by Plaintiff to obtain further discovery into the individuals identified in Defendants' supplemental disclosures stem from Plaintiff's own strategic decision to pursue motion practice instead of discovery, not any wrongdoing by Defendants.

### III.  CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's Motion to Strike.

The Honorable Lisa J. Cisneros
Page 6 of 6

**LATHAM & WATKINS LLP**

By: /s/ *Colleen C. Smith*
Colleen C. Smith (Bar No. 231216)
*Colleen.Smith@lw.com*
12670 High Bluff Drive
San Diego, California 92130
T: (858) 523-5400

Meryn C. N. Grant (Bar No. 291315)
*Meryn.Grant@lw.com*
10250 Constellation Blvd Suite 1100
Century City, CA 90067
T: (424) 653-5500

Michele D. Johnson (Bar No. 198298)
*Michele.Johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
T: (714) 540-1235 / F: (714) 755-8290

Susan E. Engel (*pro hac vice*)
*Susan.Engel@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
T: (202) 637-2200

*Attorneys for Defendants ChemoCentryx, Inc. and Thomas J. Schall*