August 2, 2024

**FILED VIA ECF**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom G
450 Golden Gate Avenue
San Francisco, CA 94102

      RE:  *Homyk v. ChemoCentryx, Inc.*, Master File No. 4:21-cv-03343-JST-LJC

Dear Judge Cisneros:

  The parties respectfully submit this joint letter. Defendants state this letter is submitted in connection with their request for orders permitting completion of three third-party depositions after the fact-discovery deadline. Plaintiff states that this letter is submitted in connection with Defendants' further attempt to sandbag by noticing multiple depositions, including of the untimely disclosed securities analysts, to occur after the Court-ordered fact discovery deadline and another deposition to occur more than a month after the fact discovery cutoff *and* even after the deadline for Plaintiff to submit its expert reports. In accordance with Your Honor's Standing Order, the parties state that: fact discovery closes on August 7, 2024; Plaintiff's expert reports are due September 6, 2024; expert discovery closes December 13, 2024; summary judgment motions are due March 20, 2025; and trial begins on September 22, 2025. The parties met and conferred via telephone, videoconference, and/or email on July 5, 8, 16, 23, 26, 27, 30 and 31.

**I.  DEFENDANTS' POSITION**

  Defendants move for orders permitting (1) depositions of two third-party stock market analysts—one and three business days, respectively—after the August 7, 2024 fact-discovery deadline, and (2) completion of the final two hours of testimony for an adjourned third-party deposition, in which the witness agreed *on the record* (and repeatedly since) to return for a short examination by Defendants' counsel. In both cases, the only impediment is that the third-parties have since indicated they are unavailable before the fact-discovery deadline, but *are* available shortly thereafter and willing to sit for testimony. Good cause exists for this limited modification to the fact-discovery deadline. Defendants have diligently pursued the depositions, and they can proceed without any affect on the trial date. Despite the absence of any conceivable prejudice, Plaintiff still refuses to consent to these depositions, necessitating this motion.

  *Market Analysts*. Plaintiff has refused to accommodate the deposition of two stock market analysts shortly after the fact discovery cutoff. On April 24, 2024, with almost four months left in fact discovery, Defendants served third-party document subpoenas on stock analyst firms. Plaintiff followed with subpoenas of its own. Since then, counsel have negotiated the proper scope of production from the analysts, but to date, the analysts' productions are substantially incomplete. As such, on July 9, 12, and 19, Defendants noticed and served deposition subpoenas on the analysts to preserve their rights. One analyst (Piper Sandler) ultimately agreed to a deposition within the

fact-discovery period, but two others, Raymond James and H.C. Wainwright, are not available before the August 7 fact-discovery deadline, but are instead available on August 9 and 12, respectively. However, Plaintiff refused to agree. Notably, Plaintiff continues to serve its own discovery; on July 16, 2024, Plaintiff issued document subpoenas to five new entities, even though they are unlikely to complete productions before the fact-discovery deadline.

Stock market analysts publish reports about the business and financial performance of publicly traded companies, which are available for investors to consult when making investment decisions. To prepare these reports, they conduct research and analysis of publicly available information about the companies they cover. Stock market analysts are also a proxy for reasonable investors and hence their testimony about what was and was not material to their coverage of the Company may be highly relevant. Defendants are confident that testimony from these analysts will show that the market actually was *not* misled by Defendants about its new drug application before the FDA. Indeed, Plaintiff concedes the relevance of the stock market analysts to this case, as its Amended Complaint ("AC") repeatedly cites to, and relies on, stock market analyst reports. *See e.g.*, AC ¶¶ 6, 18, 55, 66, 73, 77, 171, 188, 209, 433–34. Defendants are entitled to probe these issues through discovery. *See G & G Closed Cir. Events, LLC v. Cuevas*, 2021 WL 4288528, at *1 (S.D. Cal. Aug. 18, 2021) (good cause to extend fact discovery for purpose of taking specific depositions because of "the preference of courts to decide cases on the merits").

Good cause exists because Defendants timely served subpoenas on the third party analysts and were diligent in seeking their depositions. Defendants' served document requests to the third-party analysts almost four months before the close of fact discovery (and were followed by numerous meet-and-confers on scope, productions, and timing) and deposition subpoenas were served on July 9, 15 and 19, 2024, beginning roughly a month prior to the close of fact discovery. Two non-party witnesses stated their unavailability before August 7, but agreed to appear mere days after the fact discovery cut-off. Defendants conferred with Plaintiff about accommodating these third-parties, which Plaintiff rejected despite no stated scheduling conflicts or impacts on other deadlines. Defendants have therefore satisfied their burden of diligence. *See Shelton-Pryor v. City of Vallejo*, 2017 WL 5294371, at *3–4 (E.D. Cal. Nov. 13, 2017) (party was diligent where they pursued four depositions three weeks prior to fact discovery deadline).

Lastly, given that Defendants request a modest extension with no impact to any other deadlines, there is no prejudice to Plaintiff. The analysts are "only available" to sit for depositions shortly after the current fact discovery deadline, and allowing that will have "minimal impact on the proceedings" and, as such, there is no conceivable "prejudice" to Plaintiff. *Mendez v. Fiesta Del Norte Home Owners Ass'n*, 2016 WL 1643780, at *3 (D. Nev. Apr. 26, 2016). Indeed, on the Parties' several meet-and-confers, Plaintiff has not once articulated how it will be prejudiced by such a modest extension. *See Casillas v. Bayer Corporation*, 2024 WL 3440449, at *1–2 (N.D. Cal, July 16, 2024) (allowing deposition after fact discovery cut-off where plaintiffs' opposition did not present "meaningful argument regarding a lack of good cause or prejudice").

***Dr. Willis Maddrey***. Dr. Maddrey was a consultant regarding liver safety for the ADVOCATE trial. On December 15, 2023, Plaintiff conducted an examination of Dr. Maddrey for almost six hours on the record. Defendants had their own questions, which they estimated at approximately two hours, but given Dr. Maddrey's advanced age, and his and opposing counsel's

flight schedules that day, it was *agreed on the record* that the deposition would be adjourned, and Dr. Maddrey's counsel represented that he would return at a later time for Defendants' questioning. Following the deposition, Defendants and Dr. Maddrey came to an agreement as to the duration (two hours) of the continued deposition. However, over the next few months, and despite numerous attempts by Defendants, agreeable times were not reached among Dr. Maddrey, his counsel, and the parties' counsel. On July 2, 2024, Dr. Maddrey's counsel advised that his client is not available any date in July or August, but could sit for his final two-hours of testimony on September 10, 17, 18 or 19, 2024. Defendants were willing to accommodate these dates and conferred repeatedly with Plaintiff's counsel, but Plaintiff has refused to agree. Accordingly, Defendants respectfully ask the Court to honor Dr. Maddrey's request and order that his adjourned deposition may conclude prior to September 20, 2024.

Good cause exists to take Dr. Maddrey's deposition. Dr. Maddrey's counsel has repeatedly affirmed his intention to "honor[] the agreement we reached as to the scope and length of Dr. Maddrey's continued deposition," and Plaintiff has never disputed Defendants' entitlement to complete this deposition. *See Urb. v. Urb.*, 2023 WL 3579323, at *1 (N.D. Cal. Jan. 31, 2023) (permitting deposition after discovery deadline where "the parties agreed on the record that further deposition testimony was required"). The only issue is Dr. Maddrey's unavailability during the remaining fact discovery period. Since January, Defendants have offered countless dates for the 2-hour deposition of Dr. Maddrey—none of which were accepted. Meanwhile, Plaintiff's counsel repeatedly obstructed attempts to agree upon a date including (i) conditioning the provision of dates on the scheduling of other depositions that Plaintiff noticed; (ii) when pressed, only providing dates on a "provisional basis;" and (iii) providing repeated misleading recitations of the scheduling history and the parties' agreements about the continued deposition.[1] And for the last month, Defendants have repeatedly offered solutions to accommodate Dr. Maddrey's availability, including extensions to the parties' expert disclosure deadlines, which Plaintiff has each time rejected. Defendants were therefore diligent in their pursuit of Dr. Maddrey's deposition.

Plaintiff would suffer no prejudice from such an extension. Despite numerous requests from Defendants, the only prejudice Plaintiff has identified is the supposed impact of a continued deposition on Plaintiff's expert disclosures, due September 6, 2024. First, this argument is unfounded—Dr. Maddrey is a fact witness whose testimony should have no bearing on Plaintiff's expert disclosures. Second, Plaintiff has already deposed Dr. Maddrey for nearly six hours, and had ample opportunity to ask any questions useful for Plaintiff's affirmative expert submissions. Third, given that Dr. Maddrey offered to sit on September 10—just four days after opening expert reports—Plaintiff's expert deadline could be moderately extended without harming the trial date or other important case deadlines. Plaintiff would suffer no prejudice from such an extension, and good cause thus exists. *See Casillas*, 2024 WL 3440449, at *1–2.

## II. LEAD PLAINTIFF'S POSITION

Defendants' last-minute motion is their latest tactic in their well-documented sandbagging strategy. Discovery in this case has been ongoing for ***a year and a half***, providing both parties

---

[1] At no time during the many months of scheduling attempts did Plaintiff provide an explanation for why their counsel was unavailable on any given date. Such tactics should not be endorsed by the Court. *See* N.D. Cal. Guidance for Professional Conduct §§ 9(b), (e).

with ample opportunity to obtain the testimony they need. *See Harper v. Lugbauer*, 2013 WL 3938699, at *2 (N.D. Cal. July 29, 2013) (Tigar, J.) ("ample opportunity to undertake discovery" where "discovery has been open for more than a year"), *aff'd*, 709 F. App'x 849 (9th Cir. 2017). The Court-ordered deadline for fact discovery is August 7—a deadline that **Defendants** proposed and argued "allows a reasonable amount of time for the parties to complete fact discovery." ECF No. 147 at 2. In diligently prosecuting its case, Plaintiff took *twelve* fact depositions within the Court-ordered period for fact discovery; Defendants, by contrast, took just *four* during that period.

Defendants now seek to take three depositions *after* the Court-ordered fact discovery deadline—i.e., nearly as many depositions that they noticed and took during the entire ***one-and-a-half-year*** fact discovery period. Meanwhile, had Defendants diligently pursued discovery, as they were specifically required to do under Judge Tigar's Case Management Order, they easily could have taken these depositions before the fact discovery deadline. They chose not to.

By untimely disclosing the analyst firms they were relying on and waiting even longer to serve any of them with deposition subpoenas, Defendants have deprived Plaintiff of any meaningful opportunity to seek discovery or otherwise prepare for these depositions. For example, for the analyst firm, Raymond James, Defendants untimely disclosed them as a witness and served Plaintiff with a deposition subpoena a mere ***nineteen days*** before the end of fact discovery. And as Defendants noted, Raymond James's document production is "substantially incomplete." Consistent with their attempt to sandbag, Defendants also requested to depose Dr. Maddrey, a liver scientist who is critical to this case, *after* the deadline for Plaintiff to serve its opening expert reports—which would mean that Plaintiff's expert reports could *not* account for all of Dr. Maddrey's testimony. Indeed, the eleventh-hour deposition that Defendants propose would disrupt every subsequent deadline in the scheduling order and thus utterly fails to account for Judge Tigar's clear warning that "[t]he Court will not consider any event subsequently scheduled by a party … or attorney … as good cause to grant a continuance." ECF No. 148 at 3.

Judge Tigar has made clear that a "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Cross v. Cent. Contra Costa Transit Auth.*, 2024 WL 2868515, at *1 (N.D. Cal. June 5, 2024) (Tigar, J.) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)). The operative scheduling order in this case provides that the fact discovery cut-off is August 7, and further states that "[t]he parties *must* take all necessary steps to conduct discovery … in a timely manner." ECF No. 148 at 3. Defendants nevertheless contend that they should be permitted to disregard the Court-ordered schedule and be permitted to take nearly as many depositions as they noticed and took during the entire one-and-a-half-year fact discovery period *after* the Court-ordered deadline, and one even *after* Plaintiff's deadline to submit its expert reports.

"A schedule may be modified only for good cause and with the judge's consent." *Harper*, 2013 WL 3938699, at *1 (Tigar, J.). The "good cause standard primarily considers the diligence of the party seeking the amendment"—here, Defendants. *Id.* (quoting *Mammoth*, 975 F.2d at 609). "[I]f the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Alcazar v. Fashion Nova, Inc.*, 2023 WL 8456323, at *1 (N.D. Cal. July 11, 2023) (Tigar, J.) (quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)). Because Defendants' predicament could have been avoided by diligently pursuing discovery, rather than attempting to sandbag, their motion should be denied.

*Analyst firms*. Defendants have plainly not been diligent in seeking to depose the third-party analysts. Defendants have known since before this litigation which analyst firms cover ChemoCentryx, but they failed to identify *any* analyst firms in their Rule 26(a) disclosures until the fact discovery cut-off was just weeks away. *See* ECF No. 156 at 2-4; ECF No. 158 at 4-5. Before that untimely disclosure—which, if struck, would indisputably moot this dispute—Plaintiff did not know that Defendants intended to rely on any analyst firms to support their defenses—let alone, which of the 22 that cover ChemoCentryx.[2] What's more, Defendants waited *another three weeks* to serve deposition subpoenas on *any* of these untimely disclosed firms. This delay is baffling, particularly given Defendants' admission that their decision to add the analyst firms to their Rule 26 disclosures stems from the Complaint, which was filed in *March 2022*. *See* ECF No. 156 at 5. The only explanation is that Defendants strategically delayed discovery for as long as possible, opting to sandbag Plaintiff with a last-minute scramble at the close of fact discovery.

Defendants attempt to justify their delay in noticing the depositions, lamenting that the analysts' productions in response to the parties' document subpoenas are still "substantially incomplete." What Defendants describe, however, demonstrates perfectly *why* Defendants' untimely disclosure of the analyst firms was improper. *See* ECF No. 156 at 2-4; ECF No. 158 at 4-5. Indeed, this is the *precise* type of harm that occurs when a party untimely supplements its disclosures, and why courts strike such untimely disclosures: document productions are delayed, depositions cannot be scheduled in a timely manner, and parties fail to meet Court-ordered deadlines. *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("Disruption to the schedule of the court … is not harmless."). If Defendants had timely disclosed and sought discovery from the analyst firms (as they were required to do), then the analyst firms' document productions would have been completed well in advance of the fact discovery cut-off, leaving the parties with ample time to depose those witnesses. Defendants instead chose sandbagging and now argue that the inevitable consequence of that choice constitutes good cause. It doesn't. Because Defendants *chose* not to diligently pursue discovery from the analyst firms, their request is without merit. *See Thompson v. CoreLogic Rental Prop. Sols., LLC*, 2022 WL 16753141, at *3 (S.D. Cal. Oct. 13, 2022) ("Choosing to delay and notice Plaintiff's depositions for *one day* after the close of fact discovery, Defendant now must face the consequence of its dilatory actions.").

*Dr. Maddrey*. Dr. Maddrey's deposition took place on December 15, 2023, nearly *eight months ago*. Defendants chose not to cross-examine Dr. Maddrey on December 15, squandering *an hour and a half* of remaining record time. Counsel for Plaintiff *urged* Defendants to conduct their examination at that time, warning Defendants' counsel that, if they chose not to, they did so at their peril. Compounding their delay, after contacting counsel for Dr. Maddrey in January 2024, Defendants let *six months* elapse without scheduling Dr. Maddrey's deposition, even though Dr. Maddrey's counsel offered numerous dates on several occasions. For example, (1) in January, Dr. Maddrey's counsel offered dates in February and March; (2) in February, Dr. Maddrey's counsel offered dates in March and April; (3) in April, Dr. Maddrey's counsel offered dates in May and June; and (4) at the end of April, Dr. Maddrey's counsel offered July 10-12. Worse yet, on May 1, Defendants preliminarily agreed to the July 10-12 dates and said they would follow up

---

[2] As counsel for Defendants acknowledged during the meet-and-confer process, should the Court grant the relief requested in Plaintiff's motion to strike Defendants' belated disclosures (ECF No. 156), then Defendants' current request would be mooted.

"ASAP," but then failed to offer these dates to Plaintiff and did not follow up with Dr. Maddrey's counsel for nearly **50 days**—by then, the July 10-12 dates already had long passed.

Defendants had *seven months* to schedule and take Dr. Maddrey's deposition and failed to do so, instead electing to notice the deposition for *after* the deadline for Plaintiff's expert reports—yet another example of sandbagging. Plaintiff has not "obstructed attempts" to schedule Dr. Maddrey's deposition (*supra* at 3): Plaintiff made clear to Defendants in January that it would evaluate whichever dates Defendants and Dr. Maddrey's counsel agreed to, and ***in March***, *offered two weeks' worth of available dates in late May and mid-June*. Defendants then failed to contact Plaintiff regarding Dr. Maddrey *at all* between March and July. Further undermining Defendants' baseless claim, this last-minute letter is *the very first time* that Defendants have sought relief from the Court with respect to Dr. Maddrey's deposition. If Plaintiff had engaged in seven months of "obstruct[ion]," as Defendants now claim, Defendants surely would have timely moved to compel Dr. Maddrey's deposition, as Judge Tigar's scheduling order requires, rather than standing by idly for seven months. *See* ECF No. 148 at 1 (requiring parties to file discovery "motions *promptly* after a dispute becomes apparent"). The only logical conclusion is that Defendants' dilatory actions and attempts to sandbag have backfired, leaving Defendants with no time to take the deposition that they should have scheduled months ago. As Dr. Maddrey's counsel wrote to Defendants, "the position you are in with respect to the discovery cutoff … is of your own doing." *See CoreLogic*, 2022 WL 16753141, at *2 (no good cause where "Defendant has not demonstrated any diligence in conducting discovery during the preceding five months").

\*   \*   \*

The parties appreciate the Court's attention to this matter.

Respectfully submitted,

| | |
|---|---|
| **LATHAM & WATKINS LLP** | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** |
| By: */s/ Colleen C. Smith*<br>Colleen C. Smith (Bar No. 231216)<br>*Colleen.Smith@lw.com*<br>12670 High Bluff Drive<br>San Diego, California 92130<br>T: (858) 523-5400<br><br>Meryn C. N. Grant (Bar No. 291315)<br>*Meryn.Grant@lw.com*<br>355 South Grand Avenue<br>Los Angeles, CA 90071-1560<br>T: (213) 485-1234 / F: (213) 891-8763<br>Michele D. Johnson (Bar No. 198298)<br>*Michele.Johnson@lw.com*<br>650 Town Center Drive, 20th Floor | */s/ Jonathan D. Uslaner*<br>Jonathan D. Uslaner (Bar No. 256898)<br>(jonathanu@blbglaw.com)<br>Lauren M. Cruz (Bar No. 299964)<br>(lauren.cruz@blbglaw.com)<br>Caitlin C. Bozman (Bar No. 343721)<br>(caitlin.bozman@blbglaw.com)<br>Chloe Jasper (Bar No. 336556)<br>Chloe.Jasper@blbglaw.com<br>2121 Avenue of the Stars, Suite 2575<br>Los Angeles, California  90067<br>Tel: (310) 819-3470<br><br>*-and-*<br>Salvatore Graziano (admitted *pro hac vice*)<br>(salvatore@blbglaw.com)<br>Abe Alexander (admitted *pro hac vice*)<br>(abe.alexander@blbglaw.com) |

Costa Mesa, CA 92626-1925
T: (714) 540-1235 / F: (714) 755-8290

Susan E. Engel (*pro hac vice*)
*Susan.Engel@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
T: (202) 637-2200

Blake T. Denton (*pro hac vice*)
*blake.denton@lw.com*
1271 Avenue of the Americas
New York, NY 10020
T: (212) 906-1200

*Attorneys for Defendants ChemoCentryx, Inc. and Thomas J. Schall*

Stephen Boscolo (admitted *pro hac vice*)
(stephen.boscolo@blbglaw.com)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Lead Counsel for Lead Plaintiff Indiana Public Retirement System and the Class*

## SIGNATURE ATTESTATION

Pursuant to the Northern District of California's Civil L.R. 5-1(i)(3), I attest that concurrence in the filing of the document has been obtained from each of the other Signatories.

Dated:  August 2, 2024                                By: */s/ Colleen C. Smith*
                                                              Colleen C. Smith