1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    JONNIE HOMYK, et al.,                    Case No. 21-cv-03343-JST   (LJC)

8                    Plaintiffs,

9           v.                                **ORDER RE JOINT DISCOVERY
                                              LETTERS, ECF NOS. 156, 163**
10   CHEMOCENTRYX, INC., et al.,

11                   Defendants.

12

13          Before the Court are the parties' Joint Discovery Letter Briefs.  ECF Nos. 156, 163.  In the

14   first letter, Lead Plaintiff Indiana Public Retirement System (Lead Plaintiff) seeks an order to

15   strike Supplemental Rule 26(a) disclosures by Defendants ChemoCentryx, Inc. (ChemoCentryx),

16   and Thomas J. Schall, President and CEO of ChemoCentryx (together, Defendants), sent on June

17   18 and 28, 2024.  ECF No. 156 at 1.[1]  Pursuant to the Court's order, the parties filed supplemental

18   briefing on ECF Nos. 158, 159, and the Court held a hearing on the matter on July 30, 2024.  ECF

19   No. 127.  After the hearing, the parties filed a second Joint Discovery Letter Brief, ECF No. 163,

20   which relates to the first letter.  In the second letter, Defendants request an order allowing certain

21   depositions to take place after the close of fact discovery.  ECF No. 163.  Having read the Joint

22   Discovery Letter Briefs submitted by the parties and carefully considered their arguments and

23   relevant authority, for the reasons discussed herein, the Court **GRANTS IN PART AND**

24   **DENIES IN PART** Lead Plaintiff's request for a court order striking Defendants' supplemental

25   disclosures, and **GRANTS IN PART AND DENIES IN PART** Defendants' request to allow

26   certain depositions after the fact-discovery deadline.

27   _____

28   [1] Unless specified otherwise, the Court refers to the PDF page number generated by the Court's e-
     filing system.

United States District Court
Northern District of California

## I.     BACKGROUND

This order assumes the parties' familiarity with the facts and procedural history of the case. The background for this case, including the allegations against Defendants, are detailed in the presiding judge's Order Granting Motion to Certify Class, ECF No. 131 at 1-4.  Relevant to this case, the parties first exchanged the initial disclosures required under Rule 26(a) on April 5, 2023. ECF No. 65 at 5.  Fact discovery closed on August 7, 2024, the deadline for fact discovery motions is August 22, 2024, and expert disclosures for the party bearing the burden of proof are due on September 6, 2024.  ECF No. 147 at 1.  Defendants' June 18 and June 28, 2024 supplemental Rule 26(a) disclosures, sent approximately six to seven weeks before the fact discovery deadline, identify eleven new witnesses that Defendants intend to rely on during trial. The eleven newly identified witnesses are:

1. Five analyst firms (Stifel Financial Corp., J.P. Morgan Securities LLC, Raymond James & Associates, Inc., H.C. Wainwright & Co., LLC, and Piper Sandler Companies);
2. Dr. John Stone;
3. Dalia Reyes;
4. Medpace, Inc.;
5. Drs. Ulrich Specks and Christian Pagnoux; and
6. Glen Massie.

Lead Plaintiff objects to the supplemental disclosures on the grounds that they are untimely, these witnesses were not made known to Lead Plaintiffs during the discovery process, and Defendants' disclosures were not either "substantially justified" or "harmless" under Rule 37(c)(1) of the Federal Rules of Civil Procedure.

## II.    LEGAL STANDARD

Rule 26(a) requires parties to disclose the names and contact information of individuals "likely to have discoverable information" that the disclosing party may use to support its claims or defenses.  Fed. R. Civ. P. 26(a)(1)(A).  Rule 26(e), in turn, "imposes an affirmative obligation on a party to supplement its initial disclosures 'in a timely manner' if the party learns that the disclosures are incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Vieste, LLC v. Hill Redwood Development*, No. C09-04024 JSW (DMR), 2011 WL 2181200, at *2 (N.D. Cal. June 3, 2011).

1      "A party's failure to identify a witness as required by Rule 26(a) and (e) may result in the

2   prohibition of using the witness to supply evidence on that party's behalf 'on a motion, at a

3   hearing, or at a trial, unless the failure was substantially justified or is harmless.'"  *Id.* (quoting

4   Fed. R. Civ. P. 37(c)(1)).  Rule 37(c)(1) is "a 'self-executing,' 'automatic' sanction to 'provide[ ] a

5   strong inducement for disclosure of material...."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,

6   259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 37 advisory committee's note

7   (1993)).  "The party facing sanctions bears the burden of proving that its failure to disclose the

8   required information was substantially justified or is harmless."  *R & R Sails, Inc. v. Ins. Co. of*

9   *Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

10     Courts in this District have precluded parties from using witnesses disclosed even before

11  the close of fact discovery where their initial disclosures were not timely supplemented.  *See, e.g.*,

12  *Vieste*, 2011 WL 2181200, at *3 (precluding witnesses disclosed "two weeks before the close of

13  fact discovery," noting this untimely disclosure "was not harmless"); *Finjan, Inc. v. Proofpoint,*

14  *Inc.*, No. 3:13-CV-05808-HSG (HRL), 2015 WL 9900617, at *2–3 (N.D. Cal. Oct. 26, 2015)

15  (precluding witnesses disclosed before the close of fact discovery); *Baird v. Blackrock*

16  *Institutional Trust Co., N.A.*, 330 F.R.D. 241, 246–48 (N.D. Cal. Feb. 27, 2019) (same).

17  Permitting the presentation of testimony from a witness who was disclosed late is within the

18  Court's discretion.  *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).

19  **III.   ANALYSIS**

20         **A.   The Timeliness of the Witness Disclosures and Whether They Were
              "Otherwise Made Known" During Discovery**

21         Rule 26(e)(1) specifically requires a party to supplement its Rule 26(a) disclosures "*in a*

22  *timely manner* if the party learns that in some material respect the disclosure or response is

23  incomplete or incorrect, and if the additional or corrective information *has not otherwise been*

24  *made known to the other parties* during the discovery process or in writing.  Fed. R. Civ. P.

25  26(e)(1) (emphasis added).  In terms of this question of timeliness, Defendants argue that their

26  disclosures were timely in part because they were made before the close of fact discovery.  ECF

27  No. 159 at 2.

28

United States District Court
Northern District of California

1    Lead Plaintiff, however, cites to case law, ECF No. 158 at 1, where courts have stricken

2    supplemental disclosures made before fact discovery closed.  *See Baird*, 330 F.R.D. at 243, 248

3    (striking witnesses not disclosed until one and a half months before the close of fact discovery);

4    *Johnson v. Couturier*, 2009 WL 3169965, at *1 (E.D. Cal. Sept. 28, 2009) (striking witnesses not

5    disclosed until two months before the close of fact discovery); *Spencer v. Peters*, 2012 WL

6    6608616, at *1-2 (W.D. Wash. Dec. 18, 2012) (striking seven witnesses not disclosed until one

7    month before close of fact discovery, given the "quantity and proximity of disclosure to the

8    discovery cutoff date").  Defendants make a number of arguments in response the cases cited, but

9    because courts will strike witnesses both before and after the close of fact discovery, the Court is

10   unpersuaded that the supplemental disclosures were "timely" just because they were made before

11   the close of fact discovery.

12        The Court, thus, turns to the question of whether the eleven witnesses were "otherwise

13   been made known" to Lead Plaintiff in the course of discovery.  *See* Fed. R. Civ. P. 26(e).  "To

14   satisfy the 'made known' requirement, a party's collateral disclosure of the information that would

15   normally be contained in a supplemental discovery response must [be] in such a form and of such

16   specificity as to be the functional equivalent of a supplemental discovery response; merely

17   pointing to places in the discovery where the information was mentioned in passing is not

18   sufficient."  *Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST, 2021 WL 1232451, at *2 (N.D. Cal.

19   Mar. 31, 2021) (citation omitted).

20        Judge Westmore in *Baird* approached this issue by addressing the particular circumstances

21   of each of the individual witnesses.  330 F.R.D. at 243–44.  As here, the defendant in *Baird* argued

22   that it was "memorializing individuals known to Plaintiffs for months."  *Id.*; *see* ECF No. 158 at 1

23   ("Given Plaintiff's familiarity with these witnesses and their relevance to the case (Plaintiff had

24   already subpoenaed all but three of them), Plaintiff has no basis to claim "surprise" or "ambush.").

25   Therefore, here, it also makes sense to address each individual witness, or, where appropriate, by

26   category of witnesses.

27            **1.      Five Analyst Firms**

28        Lead Plaintiff served subpoenas on each of the five analyst firms: 1) Stifel Financial Corp.

United States District Court
Northern District of California

4

(ECF No. 158-6, subpoena served on April 29, 2024); 2) J.P. Morgan Securities LLC (ECF No. 158-7, subpoena served on May 15, 2024); 3) Raymond James & Associates, Inc. (ECF No. 158-8, subpoena served on May 15, 2024); 4) H.C. Wainwright & Co., LLC (ECF No. 158-4, subpoena served on April 29, 2024); and 5) Piper Sandler Companies (ECF No. 158-5, subpoena served on April 29, 2024). According to Defendants, this was after they had served their own subpoenas on the firms on April 24, 2024, with four months left in fact discovery. ECF No. 159 at 3. But Defendants did not supplement their Rule 26 disclosures to add the five firms until June 18, 2024, although they note that by June 18, none of the five analyst firms had produced responsive documents. *Id.*

Although Lead Plaintiff admits that these five firms were referenced in the Amended CAC, it argues that a total of twenty-two analyst firms covered ChemoCentryx during the Class Period, and that it had no way of knowing which of these twenty-two firms Defendants intended to rely on. ECF No. 158 at 4. Defendants call this argument a "red herring" and argue that they are relying on the five firms that they subpoenaed, that Lead Plaintiff subpoenaed, and that are referenced in the Amended CAC.

Lead Plaintiff also argues that the mere issuance of a document subpoena "cannot, and does not, put Lead Plaintiff on notice that Defendants contemplate relying on that subpoenaed third party 'to support its claims or defenses,' as Rule 26 requires." ECF No. 158 at 2. Lead Plaintiff cites in part to *Shenwick*, where Judge Tigar noted that "merely pointing to places in the discovery where the information was mentioned in passing is not sufficient." 2021 WL 1232451, at *2 (citation omitted). Lead Plaintiff also cites to *Doe 1 v. City of Chicago*, 2019 WL 5290899 (N.D. Ill. Oct. 18, 2019), where the court found that the plaintiffs failed to timely disclose two witnesses even though they had been previously subpoenaed. *Id.* at *7–8. Defendants argue that *Doe 1* is not on point, because there, the plaintiffs had indicated in their discovery responses that the witnesses had no responsive information that was not protected by marital privilege, and then reversed course, meaning they had "stonewalled discovery." ECF No. 159 at 3, n. 4.

Given the fact that both Defendants' and Lead Plaintiff's subpoenas were served just a few months ago, and that Lead Plaintiff issued its subpoenas after Defendants issued their subpoenas,

United States District Court
Northern District of California

the relevance of each of the five analyst firms was in fact made known to Lead Plaintiff.  Perhaps before Defendants served the subpoenas, Lead Plaintiff in fact had no way to know which of the twenty-two analyst firms that covered ChemoCentryx Defendants would rely on.  But that argument fails after both sides issued the subpoenas.  Defendants supplemented their Rule 26(a) disclosures about one to one and a half months after the subpoenas were issued.

Lead Plaintiff attempts to argue that "while analyst *reports* are often referenced in securities fraud complaints, analysts themselves rarely testify in such cases (and are often excluded at trial) because what matters is what the published analyst report communicates to investors—*not* the analyst's unpublished, potentially anecdotal views."  ECF No. 158 at 4. Therefore, Lead Plaintiff contends that it could not have known about the witnesses from the five analyst firms by virtue of the complaint's references to these firms.  The Court, however, agrees with Defendants that the "[d]isclosure of an individual pursuant to Rule 26(a) is not conditioned on their information being admissible at trial."  ECF No. 159 at 3.

The Court also rejects Lead Plaintiff's contention that Defendants' supplemental disclosure of the analyst firms must be stricken because Defendants have not identified any individual from the firms.  ECF No. 158 at 5.  Defendants said they intend to call the analyst firms' "research analyst[s] or other designated representative."  *Id.*  There is nothing to indicate that the particular identity (or identities) of any individuals at the firms are relevant, and it is more likely that whoever ends up testifying at trial will be testifying about the analyst firm's overall view of ChemoCentryx.

Lead Plaintiff's request to strike Defendants' supplemental disclosure of the five analyst firms is **DENIED**.

### 2.      Dr. John Stone

Dr. Stone is a paid ChemoCentryx consultant.  He was first subpoenaed by Lead Plaintiff on June 23, 2023, at the beginning of fact discovery in this case.  *See* ECF No. 158-2.  He produced more than 100 documents which Defendants claim were helpful to their position, not Lead Plaintiff's.  ECF No. 156 at 5, 159 at 4.  They argue that Lead Plaintiff is now "hunting for reasons" to exclude Dr. Stone's evidence.  ECF No. 159 at 4.

Lead Plaintiff, on the other hand, argues that Dr. Stone was one of fifty potential witnesses it served with document subpoenas, and that no party deposed him. ECF No. 158 at 3. In addition, he was only referenced in passing once in the eighteen depositions conducted to date, and none of the more than 380 deposition exhibits were authored by him. *Id.* at 3–4. In contrast to Defendants, Lead Plaintiff claims that Dr. Stone only produced seventy-five documents in response to the subpoena, and that of the seventy-five, only fifteen emails were dated within the class period, and those were only dated in the last one and a half months of it. *Id.* at 3.

In this litigation half a million documents comprising more than ten million pages have been produced in the litigation, *id.* at 4, and compared to the vastly smaller production numbers asserted by both Lead Plaintiff and Defendants, Dr. Stone's documents were limited. Defendants have not disputed Lead Plaintiff's characterization of Dr. Stone's limited importance during the deposition phase of the litigation. Nor have Defendants explained why they waited almost a year after Lead Plaintiff's subpoena for Dr. Stone's documents to disclose him as a witness. The Court finds that Defendants did not "make known" Dr. Stone's importance. Accordingly, Lead Plaintiff's request to strike the disclosure of Dr. Stone may be granted unless Defendants' failure to disclose was substantially justified or is harmless. *See* Fed. R. Civ. P. 37(c)(1).

### 3. Dalia Rayes

Dalia Rayes is a former ChemoCentryx employee, and she was subpoenaed by Lead Plaintiff on October 16, 2023. *See* ECF No. 158-3. But she did not produce any documents in response to the subpoena. ECF No. 158 at 3. Ms. Rayes, however, is one of Defendants' thirty-one document custodians, and they produced 66,926 documents of hers spanning a quarter million pages. ECF No. 156 at 5, 158 at 4. It is undisputed that it was Lead Plaintiff that asked Defendants that she be added as a document custodian. ECF No. 158 at 4, 159 at 4. According to Defendants, Ms. Rayes is relevant because she was "involved in market projections" and "tasked with commercializing ChemoCentryx's products." ECF No. 159 at 4. Yet, Lead Plaintiff notes that only two of the 380 deposition exhibits were from Ms. Rayes's custodial file, and none were authored by her, although two email chains included her as a correspondent. ECF No. 158 at 3–4. It argues that the fact that Ms. Rayes was one of thirty-one document custodians did not make it

1    known to Lead Plaintiff that Defendants intended to rely on her, as opposed to any of the other

2    thirty document custodians, as a trial witness.  *Id.* at 4.  Ms. Rayes was not deposed as a witness,

3    though at the hearing on this dispute, Defendants asserted, with no specificity or detailed

4    explanation, that she was referenced in multiple depositions.

5            As with Dr. Stone, the fact that document subpoena was issued in October 2023, that Ms.

6    Rayes did not produce documents in response, that her custodial records were of minimal use as

7    exhibits in deposition, and that she was merely referenced during depositions, leads the Court to

8    find that Defendants did not "make known" her importance to their defense against the claims in

9    this case.  Given this record, it was understandable for Lead Plaintiff to have a view that she was

10   unimportant to this litigation.  The Court finds that Defendants had not otherwise made Ms. Rayes

11   known to Lead Plaintiff as a witness upon whom they would rely.  Thus, Lead Plaintiff's request

12   to strike the supplemental disclosure of Ms. Rayes may be granted unless Defendants' failure to

13   disclose her as a witness was substantially justified or is harmless.  *See* Fed. R. Civ. P. 37(c)(1).

14                   **4.    Medpace, Inc.**

15           Medpace was the organization responsible for conducting the clinical trial for avacopan,

16   and it provided ChemoCentryx "with a broad array of services ranging from investigator training

17   to clinical monitoring to data management."  ECF No. 159 at 4.  Lead Plaintiff served a subpoena

18   on Medpace on June 2, 2023.  *See* ECF No. 158-1.  Lead Plaintiff sought to enforce the subpoena,

19   filing a motion to compel in the Southern District of Ohio on November 15, 2023.  *See In re*

20   *Subpoena to Medpace, Inc.*, No. 1:23-mc-00014 (S.D. Ohio).  The motion was denied as moot on

21   March 20, 2024 (*id.*, ECF No. 25), months after the parties informally communicated with the

22   court to let it know that they were working to resolve the dispute without court intervention.

23   According to Defendants, Medpace produced documents in July 2024, and Defendants

24   supplemented their Rule 26 disclosures to name Medpace before Medpace even finished its

25   document production.  ECF No. 159 at 5.  They also claim that Medpace is referenced in 107,705

26   documents in this case, which they note is about 24% of produced documents.  ECF No. 156 at 6,

27   n. 4.

28           According to Defendants, the reason they waited to disclose Medpace as a witness is

United States District Court
Northern District of California

because Lead Plaintiff's "case theory changed in the middle of discovery."  ECF No. 159 at 4.

They claim that in Lead Plaintiff's Reply in Support of its Motion to Certify the Class, it asserted

that Defendants manipulated trial data to trick the FDA into approving avacopan.  ECF No. 156 at

5–6, 159 at 4–5.  The Reply was filed on January 23, 2024.  ECF No. 102.  Apparently, this theory

"grew in significance and scope" during depositions that followed, including the deposition of Dr.

Richard Glassock.  According to Defendants, they supplemented their disclosures and added

Medpace in direct response to this new theory, given that Medpace "was responsible for

maintaining the integrity of ADVOCATE trial data and signed off on re-adjudication of certain

patients."  ECF No. 156 at 6.  Lead Plaintiff does not address Medpace in much substance in either

the original Joint Discovery Letter or in its Supplemental Brief.  As to the "new theory" argument,

in the Joint Discovery Letter, Lead Plaintiff pointed out that the Reply was filed six months ago,

and that Defendants "do not, and cannot, offer any justification why they waited *six months* to

disclose these witnesses."  *Id.* at 2.

Given that Medpace was the organization responsible for running the clinical trial at the

heart of this case, the Court is not inclined to credit Defendants' assertion that it did not believe

Medpace was relevant until after Defendants proposed this "new theory."  Moreover, Lead

Plaintiff's accusation that Defendants manipulated clinical trial data is not "new."  This Court

previously decided a discovery dispute in this case concerning a subpoena to the FDA.  *See* ECF

No. 98-3 (sealed version of the Joint Discovery Letter).  That earlier letter accused ChemoCentryx

of manipulating trial data.  *Id.* ("The record shows that, after learning Advocate did not achieve

the primary efficacy endpoint that FDA had made clear was essential to approval, ChemoCentryx

manipulated the trial data by unblinding the results and changing patient scores.").  The Joint

Discovery Letter was filed on January 16, 2024, a week before the Reply.  Lead Plaintiff relied on

testimony from the deposition of Dr. Glassock, which occurred on December 1, 2023.  *See* ECF

No. 98-7.  Clearly, Defendants knew about Lead Plaintiff's theory that they manipulated clinical

data before the Reply was filed.  Defendants offer no other reason behind why they waited a year

and a half to eventually supplement its Rule 26(a) disclosures to add Medpace as a witness.

Therefore, the Court finds that Defendants failed to disclose on a timely basis that they would rely

1    on Medpace as a witness. Thus, Lead Plaintiff's request to strike the supplemental disclosure of

2    Medpace may be granted, unless Defendants' failure to disclose Medpace as a witness was

3    substantially justified or is harmless.

4                       **5.      Drs. Ulrich Specks and Christian Pagnoux**

5                Unlike the witnesses above, Lead Plaintiff never served subpoenas on these two witnesses.

6    According to Defendants, Dr. Specks and Dr. Pagnoux were investigators during the clinical trial.

7    ECF No. 159 at 5.  They saw patients, administered the drug, and evaluated patient symptoms.  *Id.*

8    Defendants argue that, like Medpace, their testimony is necessary to attack Lead Plaintiff's theory

9    that ChemoCentryx manipulated trial data.  *Id.*  Defendants also claim that Dr. Specks and Dr.

10   Pagnoux were referenced in more than 10,000 produced documents, and that they are publicly

11   listed as investigators for the avacopan trial.  *Id.* (citing ECF No. 87-6 at 2, 6) (one of thirty-eight

12   exhibits attached to Defendants' Opposition to the Motion to Certify the Class).  Lead Plaintiff

13   respond by pointing out that neither individual was ever subpoenaed and they have "virtually no

14   connection to the facts at issue in this case, as their conspicuous absence from discovery to-date

15   makes clear."  ECF No. 158 at 3.  Lead Plaintiff further claims that Defendants designated these

16   two investigators to testify on topics that have nothing to do with ChemoCentryx's data

17   manipulation.  *Id.*

18               Little in the record supports Defendants' position that Dr. Specks and Dr. Pagnoux were

19   made known to Lead Plaintiff.  Even if they were referenced in 10,000 produced documents,

20   according to Lead Plaintiff, over half a million documents have been produced in this litigation.

21   Defendants have not demonstrated that these references in a small fraction of documents were

22   sufficient to put Lead Plaintiff on notice that Defendants intended to rely upon these individuals as

23   witnesses.  Moreover, Defendants' claim that a "new theory" emerged over the course of

24   discovery is not credible because it is evident from the record that Lead Plaintiff's accusations

25   regarding data manipulation began as early as December 2023, with Dr. Glassock's deposition,

26   and were a significant feature on Lead Plaintiff's Reply in January 2024.  Even if the Court were

27   persuaded that a new theory emerged in January 2024, Defendants failed to adequately explain

28   why they still waited six months to supplement their Rule 26(a) disclosures.  Defendants'

United States District Court
Northern District of California

1    generalized contention that the theory grew in significance and scope does not demonstrate that

2    any particular deposition or event during the course of this period of discovery informed Lead

3    Plaintiff that Defendants intended to rely on these two specific investigators, Dr. Specks and Dr.

4    Pagnoux. Thus, Lead Plaintiff's request to strike the supplemental disclosure of Dr. Specks and

5    Dr. Pagnoux may be granted, unless Defendants' failure to disclose them as witnesses was

6    substantially justified or is harmless.

7                     **6.      Glen Massie.**

8          Mr. Massie was a patient who used TAVNEOS®.  ECF No. 159 at 5.  According to

9    Defendants, Mr. Massie is a "patient advocate who spoke" during the May 6, 2021 Advisory

10   Committee public meeting "that prompted this lawsuit."  *Id.*  Defendants argue that they intend to

11   use information about how Mr. Massie used TAVNEOS® to "demonstrate it is an effective, life-

12   saving drug," and therefore disprove Lead Plaintiff's "unsound premise that ChemoCentryx

13   tricked the FDA into approving an ineffective drug."  *Id.*  As with Dr. Specks and Dr. Pagnoux,

14   Lead Plaintiff points out that it did not serve a subpoena on Mr. Massie, and that he has "virtually

15   no connection to the facts at issue in this case."  ECF No. 158 at 3.  There is no indication that Mr.

16   Massie was referenced or came up anywhere during discovery, and according to Lead Plaintiffs,

17   "Defendants acknowledged 'Massie would not be on [Plaintiff's] radar.'"  ECF No. 156 at 2.  For

18   the same reasons as Dr. Specks and Dr. Pagnoux, the Court finds that Defendants did not make

19   Mr. Massie "known" to Lead Plaintiff as an intended witness.  Based on the record, he is a brand-

20   new witness introduced less than two months before the close of fact discovery.  His disclosure by

21   Defendants was not timely, and accordingly Lead Plaintiff's request to strike the supplemental

22   disclosure of Mr. Massie may be granted, unless Defendants' failure to disclose him was

23   substantially justified or is harmless.

24                **B.      The Application of Rule 37(c)(1) to Strike Late-Disclosed Witnesses**

25         As explained above, the Court has found that the five analyst firms were "made known"

26   during the discovery process, but the other six witnesses--Dr. John Stone, Dalia Reyes, Medpace,

27   Inc., Drs. Ulrich Specks and Christian Pagnoux, and Glen Massie--were not.  For those six

28   witnesses the Court considers whether Defendants established that their disclosure was either

United States District Court
Northern District of California

1    "substantially justified" or "harmless" under Rule 37(c)(1).  If the untimely disclosures were not

2    substantially justified or harmless, the witnesses must be stricken.  *See Baird*, 330 F.R.D. at 243.

3           The Court understands Defendants' position to be that a "new theory" of data manipulation

4    emerged, and that is the reason the supplemental disclosure of these new witnesses did not occur

5    until mid-June 2024.  Defendants, however, do not provide any concrete explanation as to why

6    they waited six months to supplement their Rule 26(a) disclosures in response to this theory, other

7    than to vaguely assert that they were learning more about the theory through "deposition questions

8    and discovery requests."  ECF No. 156 at 5.  This thin explanation does not meet the demands of

9    Rule 37(c)(1), which requires that the belated timing be "substantially justified."  Even if the

10   Court were to accept this as substantial justification, by Defendants' own admission, only

11   Medpace, Dr. Specks, Dr. Pagnoux, and Mr. Massie were disclosed in response to the data

12   manipulation theory.  There is no other justification given as to Dr. Stone or Ms. Rayes.

13          With respect to the question of whether the late disclosure is harmless, Defendants argue

14   that they "made known" to Lead Plaintiff at least the five analyst firms, Ms. Rayes, and Dr. Stone,

15   and that therefore Lead Plaintiff had sufficient, meaningful notice to prepare its case.  ECF No.

16   156 at 5.  Defendants also argue that since they supplemented their disclosures, Lead Plaintiff

17   served "six new subpoenas to third parties who do not appear on either party's Rule 26

18   disclosures."  ECF No. 159 at 5.  Defendants question why Lead Plaintiff did not serve the

19   subpoenas on any of the eleven new witnesses.  They argue that any prejudice to Lead Plaintiff in

20   terms of its ability to obtain further discovery as to the witnesses' is due to its "own strategic

21   decision to pursue motion practice instead of discovery."  *Id.*

22          Lead Plaintiff argues that the disclosure was not harmless because for the last fourteen

23   months, it conducted extensive discovery in reliance on Defendants' initial Rule 26 disclosures,

24   including by serving seventy-nine document requests, thirty-three third-party subpoenas, and

25   deposing nine witnesses from the Rule 26 disclosures.  ECF No. 156 at 3.  Lead Plaintiff further

26   argues that it would have to "redo" discovery if the eleven witnesses were allowed to stand.  *Id.*

27   Indeed, the schedule timing of the disclosures and this dispute have left virtually no time for

28   additional fact discovery.  Lead Plaintiff also points out that it has exhausted fourteen of its fifteen

United States District Court
Northern District of California

1   allotted depositions.  *Id.*

2         The Court agrees that the late disclosures have not been harmless.  Even if Lead Plaintiff

3   had immediately dived into obtaining discovery from the eleven witnesses after Defendants served

4   their Rule 26(a) supplemental disclosures, approximately seven weeks of fact discovery is not

5   enough time to conduct discovery for eleven witnesses.  Lead Plaintiff cites to *Finjan, Inc.*

6   *Proofpoint, Inc.*, No. 313-CV-05808-HSG (HRL), 2015 WL 9900617 (N.D. Cal. Oct. 26, 2015),

7   where Judge Lloyd found that the supplemental disclosure of two witnesses made four days before

8   the close of fact discovery was not harmless because "it was not reasonable to expect plaintiff to

9   divert time and resources to prepare for and take the depositions of Ross and Kennedy, who were

10  disclosed at the eleventh hour."  *Id.* at *3.  It is true that here, the disclosures were made

11  approximately seven weeks before the close of fact discovery, but there are eleven witnesses here,

12  not two as in *Finjan*.

13        Given the untimeliness of Defendants' supplemental disclosures, the lack of a substantial

14  justification and the resulting harm to Lead Plaintiff, the Court **GRANTS** Lead Plaintiff's request

15  to strike Defendants' untimely disclosure of six witnesses— Dr. John Stone, Dalia Reyes,

16  Medpace, Inc., Drs. Ulrich Specks and Christian Pagnoux, and Glen Massie.

17        **C.     Lead Plaintiff's Alternative Request**

18        Lead Plaintiff requests that, if the Court does not strike all eleven witnesses, Defendants be

19  ordered to produce all documents related to the newly disclosed witnesses and subject matter, that

20  the new witnesses be make available for deposition, and that Defendants produce for deposition all

21  the previously deposed witnesses to allow for testimony about the newly identified witnesses and

22  subject matter.  ECF No. 156 at 4.  The Court agrees with Defendants that this is "an extraordinary

23  and unnecessary remedy" given that Lead Plaintiff has already deposed most of the witnesses and

24  that Lead Plaintiff has not explained with any degree of particularity why it needs to reopen

25  depositions.

26        The Court grants Lead Plaintiff's request for the production of all documents related to the

27  five analyst firms and its request to depose them, as the Court has declined to strike these

28  witnesses from Defendants' supplemental disclosures.  The Court, however, denies without

United States District Court
Northern District of California

prejudice Lead Plaintiff's request to reopen all depositions to allow questioning about the newly identified witnesses and subject matter.  Lead Plaintiff may renew its requests before August 22, 2024, if it obtains information from the depositions of the five analyst firms that merits reopening certain depositions.

### D.     The Parties' Additional Joint Discovery Letter, ECF No. 163

In this letter Defendants move for an order permitting the depositions of two third-party stock market analysts from Raymond James and H.C. Wainwright on August 9 and August 12, 2024, after the fact-discovery cutoff.  ECF No. 163 at 1-2.  The Court finds that there is good cause to grant this request given the Court's ruling herein denying Lead Plaintiff's request to strike the five analyst firms and permitting their deposition.  *See* Civ. L.R. 37-3 ("Discovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown.").  To limit the extent to which further fact discovery diverges from the Court's existing case management schedule, Lead Plaintiff is permitted to depose the five analyst firms before August 22, 2024, which is the current deadline for fact-discovery related motions.

Defendants also request an order permitting it to conduct the final two hours of a deposition for Dr. Willis Maddrey on September 10, 17, 18, or 19, 2024.  Lead Plaintiff previously deposed Dr. Maddrey on December 15, 2023 for almost six hours on the record, and it was agreed on the record that deposition would be adjourned and Dr. Maddrey's counsel represented that he would return at a later time for Defendants' questioning.  The Court notes that proposed dates in September are after the deadline for Lead Plaintiff's expert disclosure, and thus, would deprive its expert of an opportunity to consider and address any further testimony from Dr. Maddrey.  Having reviewed that parties' explanation of their respective efforts to complete Dr. Maddrey's deposition, the Court is not persuaded that good cause exists to allow such a late deposition for Dr. Maddrey.  Defendants' request to finish taking Dr. Maddrey's deposition testimony in September 2024 is denied.

### IV.     CONCLUSION

The Court **DENIES** Lead Plaintiff's request for a court order striking Defendants'

United States District Court
Northern District of California

supplemental disclosures as to the five analyst firms (Stifel Financial Corp., J.P. Morgan Securities LLC, Raymond James & Associates, Inc., H.C. Wainwright & Co., LLC, and Piper Sandler Companies) and **GRANTS** its request to strike Dr. John Stone, Dalia Reyes, Medpace, Inc., Dr. Ulrich Specks, Dr. Christian Pagnoux, and Glen Massie.  The Court further orders that the parties may conduct document discovery and depose the five analyst firms before August 22, 2024, and specifically, Raymond James and H.C. Wainwright may be deposed on August 9 and August 12, 2024, respectively.  Lead Plaintiff's request to reopen the depositions for witnesses who have already been deposed is **DENIED** without prejudice**.**  Defendants' request to finish taking Dr. Maddrey's deposition testimony in September 2024 is **DENIED**.  This order resolves the parties' Joint Discovery Letter Briefs, ECF Nos. 156 and 163.

      **IT IS SO ORDERED.**

Dated: 8/8/2024

LISA J. CISNEROS
United States Magistrate Judge