# Attachment 6

# Uslaner Declaration Ex. 40

# (ECF No. 303-8)

# Exhibit 40

FILED UNDER SEAL

Message
_____

| | |
|---|---|
| **From:** | Sunita Sethi [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=629939FA62B1403093B4F1F05527B901-SUNITA SETH] |
| **Sent:** | 3/11/2021 11:09:27 PM |
| **To:** | Thomas Schall [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b984815f957d402b902753bf53af3539-Thomas Scha] |
| **Subject:** | Fwd: CL010_168 Data Monitoring Committee requests |
| **Attachments:** | DMC communication to ChemoCentryx- 3-1-2021.docx |

Just got this.. I haven't ever gotten a direct communication from Dr. Goodkin.

Shall we have a call to discuss?

Best regards,
Sunita
Cell: 650 463 6876

EXHIBIT 103
D. Goodkin
1/30/2024
Tami Lynn Vondran
CRR, RMR, CCR# 2157

Begin forwarded message:

> **From:** davidagoodkin@comcast.net
> **Date:** March 11, 2021 at 3:06:36 PM PST
> **To:** Sunita Sethi <ssethi@chemocentryx.com>
> **Cc:** "Cattran, Daniel" <daniel.cattran@uhn.ca>, Richard Glassock <rjglassock@gmail.com>, "Kalunian, Kenneth" <kkalunian@health.ucsd.edu>, "Trachtman, Howard" <Howard.Trachtman@nyulangone.org>, chao.wang@pharmadataassociates.com
> **Subject: CL010_168 Data Monitoring Committee requests**

Dear Ms. Sethi,

The CL010_168 ADVOCATE  Data Monitoring Committee wants you to be aware of the attached DMC requests sent to Drs. Kedia, Kelleher, and Schall of ChemoCentryx by Dr. Glassock that urge certain communications by ChemoCentryx to the FDA and other regulatory authorities.  Critical safety data and the protocol amendment mandating drug cessation for specific elevations of liver function tests were unreported in the recent New England Journal of Medicine publication of the ADVOCATE trial.  This information, and the DMC recommendations regarding the trial, should be submitted to regulatory authorities and not simply buried within the master file.  We call to your attention the following, from an FDA guidance document on DMCs:

https://www.gmp-compliance.org/files/guidemgr/clindatmon.pdf

5. DMC RECOMMENDATIONS AND REGULATORY REPORTING REQUIREMENTS

All clinical trials conducted under an IND or IDE are subject to regulatory safety reporting requirements. These requirements include prompt reporting to FDA of certain serious and unexpected adverse events (see 21 CFR 312.32(c), 21 CFR 312.52, 21 CFR 812.46(b), 21 CFR 812.150(b)(1)). In general, for an event that is individually recognizable as a serious event potentially related to administration of a medical product (e.g., agranulocytosis, hepatotoxicity for drug studies), the sponsor (sometimes through a CRO managing that aspect of the trial, see 21 CFR 312.52) is responsible for

CCXI-0000349022

notifying FDA (21 CFR 312.32, 21 CFR 812.150(b)(1)). The sponsor may make this notification with or without unblinding the individual case, as appropriate.

As discussed above in Section 4.4.1.2, evidence of a possible relationship between many serious adverse events and an investigational drug might be detectable only by comparison of rates in the two arms of a controlled trial and not by review of individual cases. For example, in a drug trial carried out in patients with coronary artery disease, in whom heart attacks and strokes would be expected to occur, an increased heart attack or stroke rate would not be recognized except by comparison to the rate in the control group; if such comparison demonstrated an increase in heart attack and stroke rate, it could be presumed that the increase in heart attack and stroke rate was drug-related. Such a finding involving a serious adverse event, conveyed to a sponsor by a DMC with a recommendation to change the trial (e.g., design, informed consent), could represent, on its face, a report of one or more serious unexpected adverse event(s). As required by 21 CFR 312.32(d)(1), the sponsor would need to investigate a DMC's recommendation relating to such events as potentially reportable to FDA under 21 CFR 312.32. If the sponsor concluded that the increased rate of serious unanticipated adverse events was "associated with the use of the drug," the finding, and support for it (which could include the DMC report, any analysis, and pertinent data) would need to be submitted as a serious unexpected adverse experience. These considerations would also apply to unanticipated adverse device effects under 21 CFR 812.50(b)(1).

Findings conveyed to a sponsor by a DMC as part of a recommendation to modify the trial could therefore mean that serious and unexpected events were occurring, and the sponsor would consequently be required to report an analysis of these events to FDA and to all study investigators according to 21 CFR 312.32(c)(1)(B)(ii) (drug trials) and 21 CFR 812.150(b)(1) (device trials). Study investigators are generally responsible for reporting such findings to their IRBs, according to 21 CFR 312.66 (drug trials) and 21 CFR 812.150(a)(1) and 21 CFR 812.40 (device trials), although direct reporting from sponsors to responsible IRBs may be arranged and may be preferable in some situations; for example, when a central IRB has been established. For a device trial, however, the sponsor is responsible for notifying all participating IRBs when an evaluation of an unanticipated adverse event is conducted (21 CFR 812.150(b)(1)).

The requirement to report DMC recommendations related to serious adverse events in an expedited manner in clinical trials of new drugs (21 CFR 312.32(c)) would not apply when the DMC recommendation is related to an excess of events not classifiable as serious. Nevertheless, we recommend that sponsors inform FDA about all [emphasis added] recommendations related to the safety of the investigational product whether or not the adverse event in question meets the definition of "serious." Examples might be recommendations to lower the dose of a study agent because of excess toxicity, or to inform current and future trial participants of an emerging safety concern that had not been recognized at the start of the trial.

7.2.2. FDA Interaction with DMCs
In rare cases, we may wish to interact with a DMC of an ongoing trial to ensure that specific issues of urgent concern to FDA are fully considered by the DMC or to address questions to the DMC regarding the consistency of the safety data in the ongoing trial to that in the earlier trials, to optimize regulatory decision making.

CONFIDENTIAL

Please comply with our requests in the attached DMC letter, to assure the safety of patients treated with avacopan.  ==Do the right thing.==

Yours truly,

David A. Goodkin, MD, FACP, FASN
Chairman, CL010_168 Data Monitoring Committee
On behalf of the Committee

CONFIDENTIAL

CCXI-0000349024

To: Chemocentryx, Inc- Pyriyanka Kedia, Catherine Kelleher, MD, Thomas Schall, PhD

March 1, 2021

The DMC believes that the novel findings of the ADVOCATE trial should alter the treatment paradigm for ANCA-associated vasculitis and reduce steroid-associated side effects during long term management of patients with this disease. However, we are concerned by the safety reporting in the New England Journal of Medicine article.

The risk of hepatotoxicity with the drug is covered very superficially. There is no description of the important case of positive re-challenge with avacopan, which confirms that the drug can cause transaminase elevation. There is no comment on the extent of transaminase and bilirubin elevations in the Hy's Law case. It is reasonable to question whether avacopan or TMP/SMX caused the hepatic injury in that patient. However, the independent liver expert, Dr. Maddrey, concluded that it was not TMP/SMX-induced liver injury. The casual mention of 9 serious liver adverse events on avacopan versus 6 on prednisone is an insufficient depiction of this adverse event and sounds like it represents mere noise. There is no mention of the protocol amendment requested by the DMC that mandated drug hold/cessation for abnormal liver function tests. The Supplemental Materials indicates that the DMC requested "additional monitoring," but not that drug had to be held under these circumstances. There is no reporting that study drug was held more frequently thereafter among avacopan patients than among placebo patients because of abnormal transaminases, a difference that was statistically significant. There is no message in the publication that liver function should be monitored following prescription of avacopan because of the potential for hepatotoxicity.

A second adverse event of angioedema among the avacopan group is not acknowledged (versus none in the prednisone group). The occurrence of two cases of angioedema among 166 patients exposed to avacopan in this study is a clear signal of angioedema risk. Clinicians should be made aware of the risk and all patients starting avacopan should be warned of the symptoms that must prompt immediate cessation of the drug and medical attention.

There is no mention in any of the published material that, from the start, the protocol mandated drug stopping rules for neutropenia.

In our DMC reviews of safety and efficacy during the trial, we communicated concerns for possible avacopan-induced liver injury and other significant toxicity. Although we always recommended continuation of the trial, we requested intensification of the laboratory monitoring and drug stopping rules for these adverse events. These recommendations were accepted and the protocol was revised accordingly, but these recommendations and the underlying rationale are absent in the NEJM paper.

Based on the above observations, the DMC unanimously urges you to:

- Submit all of the DMC recommendation emails, including this one, and all of the DMC meeting minutes, to supplement your NDA and other regulatory filings.
- Assure that clear warnings are provided to prescribers regarding hepatotoxicity and angioedema.
- Immediately submit a letter to the editor of the New England Journal of Medicine clarifying the hepatotoxicity risks.

CONFIDENTIAL

CCXI-0000349025

The DMC believes that avacopan should be approved for the treatment of ANCA-associated vasculitis. However, we deem it essential that liver function tests be monitored and that patients be warned about angioedema.

The CL010_168 ADVOCATE Data Monitoring Committee:

Dan Cattran

Richard Glassock

David Goodkin

Kenneth Kalunian

Howard Trachtman

Chao Wang

CONFIDENTIAL

CCXI-0000349026