**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

Salvatore J. Graziano (admitted *pro hac vice*)
(salvatore@blbglaw.com)
Katherine M. Sinderson (admitted *pro hac vice*)
(katiem@blbglaw.com)
John Esmay (admitted *pro hac vice*)
(john.esmay@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: 212-554-1400
Fax: 212-554-1444

*Counsel for Lead Plaintiff Indiana Public
Retirement System and Lead Counsel for the Class*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| JONNIE HOMYK, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CHEMOCENTRYX, INC. et al.,<br><br>                    Defendants. | Master File No. 4:21-cv-03343-JST *and related case*, No. 4:21-cv-04357<br><br>**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Judge: Hon. Jon S. Tigar<br>Courtroom: 6<br><br>Date:    May 21, 2026<br>Time:    2:00 p.m. |

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ iv

NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
    SETTLEMENT ......................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

I.      PRELIMINARY STATEMENT ................................................................................. 2

II.     FACTUAL BACKGROUND ..................................................................................... 4

III.    THE PROPOSED SETTLEMENT ............................................................................. 7

IV.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .................. 8

        A.    Standards Governing Approval of a Class Action Settlement ................................. 8

        B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement
              Under Rule 23(e)(2) ......................................................................................... 10

                1.    The Settlement Was Reached Through Arm's-Length Negotiations
                      Between Experienced Counsel .............................................................. 10

                2.    The Settlement Is Within the Range of Possible Approval .......................... 10

                3.    The Settlement Treats All Class Members Fairly ...................................... 13

                4.    Lead Plaintiff Has Identified All Agreements Made in Connection
                      with the Settlement .............................................................................. 13

V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ................................... 14

VI.     THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND
        PLAN FOR PROVIDING NOTICE TO THE CLASS ................................................. 17

        A.    Continued Retention of Kroll ............................................................................ 17

        B.    Proposed Form of Notice ................................................................................. 17

        C.    Claims Processing ........................................................................................... 19

        D.    Estimated Notice and Administrative Costs ....................................................... 20

VII.    ATTORNEYS' FEES AND LITIGATION EXPENSES ............................................... 20

VIII.   PROPOSED SCHEDULE OF EVENTS .................................................................... 21

MOTION FOR PRELIMINARY APPROVAL        i        Master File No. 4:21-cv-03343-JST
OF SETTLEMENT

IX.     CONCLUSION..................................................................................................................22

**TABLE OF AUTHORITIES**

**PAGE(s)**

**Cases**

*Adkins v. Facebook, Inc.*,
    2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) .......................................................................8

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    2025 WL 40785 (S.D.N.Y. Jan. 7, 2025) ..........................................................................17

*Baker v. SeaWorld Ent., Inc.*,
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) .........................................................................19

*Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................................9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .....................................................................................8, 14

*Elliott v. Rolling Frito-Lay Sales, LP*,
    2014 WL 2761316 (C.D. Cal. June 12, 2014) .....................................................................8

*Hatamian v. Advanced Micro Devices, Inc.*,
    2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)..................................................................21

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...................................................................14

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)...................................................................8

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) .....................................................................13

*Indiana Public Ret. Sys. v. ChemoCentryx, Inc.*,
    No. 25-5859 (9th Cir.) .....................................................................................................6

*Kendall v. Odonate Therapeutics, Inc.*,
    2022 WL 1997530 (S.D. Cal. June 6, 2022)....................................................................13

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ..........................................................................................18

*In re LendingClub Sec. Litig.*,
    2018 WL 1367336 (N.D. Cal. Mar. 16, 2018), *aff'd*, 802 F. App'x 285 (9th Cir.
    2020) .................................................................................................................................8

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...............................................................................................8

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) .............................................................................................19

*Luz Bautista-Perez v. Juul Labs, Inc.*,
  2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ...........................................................................9

*In re Lyft Inc. Sec. Litig.*,
  2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) .......................................................................16

*In re Lyft, Inc. Sec. Litig.*,
  2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ....................................................................13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................................10

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ...............................................................................................21

*In re Plantronics, Inc. Sec. Litig.*,
  No. 4:19-cv-07481-JST (N.D. Cal. Mar. 10, 2026) .............................................................16

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) .................................................................................................8

*Reynolds v. Direct Flow Med., Inc.*,
  2019 WL 1084179 (N.D. Cal. Mar. 7, 2019).......................................................................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................................14

*In re Splunk Inc. Sec. Litig.*,
  2024 WL 923777 (N.D. Cal. Mar. 4, 2024)...........................................................................8

*Stewart v. Applied Materials, Inc.*,
  2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .....................................................................10

*Thomas v. MagnaChip Semiconductor Corp.*,
  2017 WL 4750628 (N.D. Cal. Oct. 20, 2017).......................................................................14

*Vataj v. Johnson*,
  2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ......................................................................13

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .......................................................................19

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .........................................................................................21

*In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prods. Liab. Litig.*,
2019 WL 2077847 (N.D. Cal. May 10, 2019) ...................................................................21

*In re Wash. Mut., Inc.*,
2015 WL 12803633 (W.D. Wash. June 22, 2015)..............................................................19

*Yaron v. Intersect ENT, Inc.*,
2021 WL 5184290 (N.D. Cal. Nov. 5, 2021) .....................................................................18

**Statutes**

Class Action Fairness Act of 2005,
28 U.S.C. § 1715...............................................................................................................18

Securities Exchange Act of 1934, Section 10(b),
15 U.S.C. § 78j(b) ...............................................................................................................4

Securities Exchange Act of 1934, Section 20(a),
15 U.S.C. § 78t(a) ................................................................................................................4

Securities Exchange Act of 1934, Section 20A,
15 U.S.C. § 78t-1 .................................................................................................................4

**Rules**

Securities and Exchange Commission Rule 10b-5,
17 C.F.R. § 240.10b-5..........................................................................................................4

Fed. R. Civ. P. 23.........................................................................................................18, 19

Fed. R. Civ. P. 23(b)(3).........................................................................................................19

Fed. R. Civ. P. 23(e) ..................................................................................................... *passim*

Fed. R. Civ. P. 23(f)..........................................................................................................3, 5

## NOTICE OF UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

PLEASE TAKE NOTICE that Lead Plaintiff Indiana Public Retirement System hereby moves the Court on May 21, 2026, at 2:00 p.m. for an order preliminarily approving the proposed settlement pursuant to Rule 23(e)(1).

The proposed order will: (1) preliminarily approve the proposed Settlement; (2) approve the form and manner of giving notice to the Class; and (3) schedule a final settlement hearing before the Court to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses should be approved.[1] This motion is supported by the following memorandum of points and authorities in support thereof, and the Stipulation and the exhibits thereto, which embody the terms of the proposed Settlement between the Parties. Because the motion is unopposed, the Parties agree that it is appropriate for decision on the papers at this time.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed $35 million cash settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the proposed Class.

2.      Whether the proposed form of settlement notice and claim form and the manner for dissemination to the Class should be approved.

3.      Whether members of the Class who have already received a full opportunity to request exclusion from the Class should be provided an additional opportunity to opt out of the Class in connection with the notice of the Settlement.

4.      Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses and a related schedule of settlement deadlines.

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation and Agreement of Settlement, dated March 9, 2026 (the "Stipulation"), attached as Exhibit 1.

MOTION FOR PRELIMINARY APPROVAL                    Master File No. 4:21-cv-03343-JST
OF SETTLEMENT

## I.   PRELIMINARY STATEMENT

Lead Plaintiff Indiana Public Retirement System is pleased to report that, after nearly five years of hard-fought litigation, it has reached an agreement with ChemoCentryx, Inc. ("ChemoCentryx" or the "Company") and its former President and Chief Executive Officer, Dr. Thomas J. Schall (together, "Defendants") to settle this class action in exchange for a payment of $35 million in cash for the benefit of the Class, subject to the Court's approval. Lead Plaintiff respectfully submits this memorandum of points and authorities in support of its motion, pursuant to Federal Rule 23(e)(1), for preliminary approval of the proposed settlement (the "Settlement"). The motion is unopposed and ripe for resolution at this time.

The proposed Settlement represents a favorable result for the Class, particularly given the current status of the Action and the substantial risks, costs, and delays of continued litigation—including the significant risk that there might be no recovery at all for the Class.

At the time the Settlement was reached, all claims asserted by Lead Plaintiff had been dismissed by the Court when it entered its Order granting Defendants' motion for summary judgment. ECF No. 347. The Court found that all of the alleged misrepresentations were inactionable either because they were statements of opinion or were not misleading. Therefore, any recovery for the Class through litigation could only be obtained if (a) Lead Plaintiff obtained a reversal of the Court's summary judgment order through its pending appeal, and (b) thereafter succeeded at trial on remand. As discussed further below, there were significant risks presented by the current appeal that could have led to no recovery at all, and—even if Lead Plaintiff had succeeded on appeal and proceeded to trial—it would have faced a number of substantial arguments regarding liability and damages.

Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached. At the outset of the Action, Lead Plaintiff and Lead Counsel conducted an extensive investigation of the claims, including an extensive review of public documents, FOIA requests, and interviews with numerous former ChemoCentryx employees. Lead Counsel thereafter drafted and filed a detailed Amended Consolidated Class Action Complaint in March 2022. Lead Plaintiff and Lead Counsel then

litigated Defendants' motion to dismiss through extensive briefing. After the Court denied, in part, Defendants' motion to dismiss in February 2023, the Parties conducted substantial fact discovery, which included the production of millions of pages of documents and 21 fact depositions. In addition, Lead Plaintiff successfully moved for certification of the Class, defeated Defendants' Rule 23(f) petition, and disseminated the Notice of Pendency of Class Action to potential Class Members in late 2024. The Parties also engaged in extensive work with experts and engaged in substantial expert discovery, including preparing and exchanging 24 expert reports, conducting 17 depositions of expert witnesses, and filing a total of 11 *Daubert* motions. As a result of these extensive efforts, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the case.

Of note, although the Court disposed of the case at summary judgment, the FDA has since "requested that ChemoCentryx voluntarily withdraw TAVNEOS from the U.S. market."[2] In particular, "[t]he FDA raised concerns about the process followed by ChemoCentryx to re-adjudicate primary endpoint results for 9 of the 331 patients in the ADVOCATE trial," as well as concerns about the drug's hepatotoxicity risks. *Id*. Amgen, which acquired ChemoCentryx, strongly disputes these allegations and has informed the FDA that it does not intend to withdraw TAVNEOS from the market.

For the reasons discussed more fully below, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order attached as Exhibit A to the Stipulation and as Exhibit 2 hereto. The Preliminary Approval Order, among other things: (i) schedules a final hearing to consider the proposed Settlement, the proposed Plan of Allocation of the Net Settlement Fund, and Lead Counsel's motion for attorneys' fees and expenses (the "Settlement Hearing"); (ii) preliminarily approves the Settlement as fair, reasonable, and adequate to the Class, pending the Settlement Hearing; (iii) approves the form and method of disseminating notice of the Settlement to the Class; and (iv) establishes procedures and deadlines for Class Members

---

[2] *An Important Update Regarding TAVNEOS® (avacopan)*, AMGEN (Feb. 3, 2026), https://www.amgen.com/tavneos-prescribers.

to submit Claim Forms for payments from the Net Settlement Fund and object to the terms of the Settlement, Plan of Allocation, and/or requested fees and expenses.

## II.    FACTUAL BACKGROUND

The initial complaint in this Action was filed on May 5, 2021. ECF No. 1. On January 28, 2022, the Court appointed Indiana Public Retirement System as Lead Plaintiff and Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel for the potential Class. ECF No. 32.

On March 28, 2022, Lead Plaintiff filed the Amended Consolidated Class Action Complaint for Violations of Federal Securities Laws (the "Complaint"). ECF No. 47. In the Complaint, Lead Plaintiff alleges that Defendants ChemoCentryx and Schall violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission Rule 10b-5 by making alleged misrepresentations concerning ChemoCentryx's ADVOCATE study, the Company's Phase 3 clinical trial of its vasculitis drug, avacopan, and the Company's communications with the FDA related to the approval of avacopan, now known as TAVNEOS. Lead Plaintiff further asserts claims under Sections 20(a) and 20A of the Exchange Act against Defendant Schall, alleging that Schall controlled ChemoCentryx when the Company made the alleged misstatements concerning avacopan in violation of Section 20(a); and that he sold ChemoCentryx stock while in possession of material non-public information about avacopan, and that Lead Plaintiff and other Class Members purchased ChemoCentryx stock contemporaneously with those sales, in violation of Section 20A.

Defendants moved to dismiss the Complaint on May 19, 2022. ECF No. 50. On February 23, 2023, the Court issued an order granting in part and denying in part Defendants' motion to dismiss. ECF No. 61. Defendants filed their Answer to the Complaint on April 27, 2023. ECF No. 71.

On August 25, 2023, Lead Plaintiff filed a motion for class certification. ECF No. 74. The Parties conducted a private mediation in February 2024. No settlement was reached at that time.

After full briefing and a hearing, on March 6, 2024, the Court issued an Order granting the motion and certifying the Class, appointing Lead Plaintiff as Class Representative for the

Class, and appointing Lead Counsel as Class Counsel. ECF No. 131. On May 23, 2024, the United States Court of Appeals for the Ninth Circuit denied Defendants' petition for leave to take an immediate appeal of the Court's order certifying the Class pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. ECF No. 153.

On September 25, 2024, Lead Plaintiff filed an unopposed motion for Court approval of the Parties' agreed form and manner of providing notice to the Class of the pendency of the class action. ECF No. 174. On October 17, 2024, the Court entered an Order granting Lead Plaintiff's unopposed motion to approve the proposed form, content, and method for dissemination of the Notice of Pendency of Class Action (the "Class Notice") and the Summary Notice of Pendency of Class Action. ECF No. 179 (the "Class Notice Order"). Pursuant to the Class Notice Order, the Class Notice provided Class Members with the opportunity to request exclusion from the Class, explained that right, and set forth the deadline and procedures for doing so. The Class Notice informed Class Members that if they chose to remain a member of the Class, they would "be legally bound by all determinations, orders, and judgments that the Court makes in the Action, whether favorable or unfavorable." ECF No. 187-1, at 4.

The Class Notice was mailed to 35,220 potential Class Members beginning on November 13, 2024. ECF No. 187, at ¶¶ 3-11. The deadline for requesting exclusion from the Class pursuant to the Class Notice was January 14, 2025. *Id*. ¶ 15. In response to the Class Notice, two persons or entities requested exclusion from the Class. ECF No. 187-5.

During discovery, Defendants produced approximately 7.8 million pages of documents. In addition, dozens of third parties, including the FDA, Amgen Inc., and ChemoCentryx's consultants, bankers, and former employees, also produced tens of thousands of additional pages of documents. The Parties conducted 21 depositions of fact witnesses and 17 depositions of expert witnesses, and prepared and exchanged 24 expert reports.

On February 13, 2025, the Parties filed 11 *Daubert* motions. The Court heard oral argument on April 10, 2025, and decided those motions on May 21, 2025. ECF No. 277.

Lead Plaintiff filed a motion for partial summary judgment on May 8, 2025, and Defendants filed a motion for summary judgment on May 29, 2025. ECF Nos. 267, 279. The Court heard oral argument on those motions on August 7, 2025. ECF Nos. 343, 349.

On August 15, 2025, the Court issued an Order granting Defendants' motion for summary judgment and denying Lead Plaintiff's motion as moot. ECF No. 345. On the same day, the Court issued its Judgment. ECF No. 346.

On September 12, 2025, Lead Plaintiff appealed the Court's Order Granting Defendants' Motion for Summary Judgment and the Judgment to the Ninth Circuit Court of Appeals ("Ninth Circuit"). ECF No. 354. *See Indiana Public Ret. Sys. v. ChemoCentryx, Inc.*, No. 25-5859 (9th Cir.). On January 5, 2026, Lead Plaintiff filed its opening brief in support of its appeal.

On January 26, 2026, while Lead Plaintiff's appeal was pending, the Parties executed a Memorandum of Understanding ("MOU") reflecting an agreement in principle to settle all claims in this Action against Defendants and Defendants' Releasees (defined below) in return for a cash payment of $35,000,000 for the benefit of the Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers. The MOU also included an agreement among the Parties concerning limitations on Defendants' and Amgen's use of communications between Lead Plaintiff and Lead Counsel and any U.S. or foreign governmental regulator, and a related release of claims.

On January 27, 2026, the Parties filed a joint motion in the Court of Appeals seeking a stay of the appellate proceedings and a limited remand to this Court for the purpose of considering preliminary and final approval of the Parties' proposed settlement pursuant to Rule 23(e). On January 30, 2026, the Court of Appeals approved that motion and remanded this case for the limited purpose of enabling the Court to consider preliminary and final approval of a proposed Settlement. ECF No. 359.

On March 9, 2026, the Parties entered into the Stipulation, which sets forth the full terms and conditions of the Settlement.

III.  **THE PROPOSED SETTLEMENT**

The Settlement provides that Defendants will pay or cause to be paid $35 million in cash into an interest-bearing escrow account. The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Notice and Administration Costs, and Taxes and related expenses (the "Net Settlement Fund"), will be distributed among Class Members who submit valid Claim Forms, in accordance with a plan of allocation to be approved by the Court. The Settlement is not a claims-made settlement: if the Settlement is approved, Defendants and their insurers will have no right to the return of any portion of the Settlement Fund based on the number or value of Claims submitted. *See* Stipulation ¶ 13.

The Class. The Settlement will apply to the same Class that was certified by the Court in its March 6, 2024 Order (ECF No. 131). The Class includes all persons who purchased or otherwise acquired the common stock of ChemoCentryx between November 26, 2019 and May 6, 2021, inclusive, and were damaged thereby. *See* Stipulation ¶ 1(i). Excluded from the Class are (a) Defendants; (b) their respective successors and assigns; (c) the past and current executive officers and directors of Defendants; (d) the Immediate Family Members of Defendant Schall; and (e) the legal representatives, heirs, successors, or assigns of any excluded person, and any entity in which any of the above excluded persons have or had a direct or controlling ownership interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded persons or entities. *Id*. Also excluded from the Class are the two persons and entities who excluded themselves from the Class in response to the Class Notice (ECF No. 187-5), except that such persons may choose to participate in the Settlement by opting back into the Class.

The Release Is Appropriate. In exchange for the payment of the Settlement Amount, Class Members will release the "Released Plaintiff's Claims." Stipulation ¶ 1(nn). The Settlement's release provision is tailored to the Class's claims. Specifically, the release is limited to (1) the claims asserted in the Action; or (2) unasserted claims that could have been brought (or could in the future be asserted) but only if they "arise out of, are based on, or relate in any way to any of the allegations, claims, disclosures, acts, transactions, facts, events, circumstances, matters,

MOTION FOR PRELIMINARY APPROVAL                    7                    Master File No. 4:21-cv-03343-JST
OF SETTLEMENT

occurrences, conduct, failures to act, statements, representations or omissions involved, set forth, alleged or referred to in the Action (or any complaint filed in the Action) or which could have been alleged or referred to in the Action" *and* "the purchase or acquisition of ChemoCentryx common stock during the Class Period." *Id*. The Parties are not aware of any other pending cases that will be affected by the Settlement or the proposed release.

The proposed release is, therefore, tailored to the conduct at issue in this Action and is consistent with release provisions approved by courts in this District. *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *3 (N.D. Cal. Mar. 4, 2024) (approving similar release); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *3 (N.D. Cal. Dec. 18, 2018) (same); *In re LendingClub Sec. Litig.*, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018) (same), *aff'd*, 802 F. App'x 285 (9th Cir. 2020); *see generally Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 747-48 (9th Cir. 2006) (a class release may release claims not asserted in the action as long as they arise from the same set of factual allegations).

## IV.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    Standards Governing Approval of a Class Action Settlement

In the Ninth Circuit, there is a strong judicial policy in favor of voluntary settlement of litigation, and particularly so in class actions. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Adkins v. Facebook, Inc.*, 2020 WL 6710086, at *1 (N.D. Cal. Nov. 15, 2020) ("[o]ur court of appeals maintains a strong judicial policy in favor of settlement of complex class action litigation"). Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice. *See Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ("judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. A district court's review of a proposed class action settlement is a two-step process: (i) the court performs a preliminary review of the terms of the proposed settlement to determine

whether to send notice of the proposed settlement to the class; and (ii) once preliminary approval is granted, notice is delivered, and a final approval hearing is conducted, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Courts grant preliminary approval of a proposed class action settlement if it "will likely be able" to approve the Settlement as fair, reasonable, and adequate at the final hearing. Fed. R. Civ. P. 23(e)(1)(B). This standard effectively codifies prior case law, which provided that courts should grant preliminary approval after considering whether the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See, e.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022).

At the final approval stage, courts determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In considering whether a settlement is fair, reasonable, and adequate at final approval, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court also considers the factors identified by the Ninth Circuit in *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), many of which overlap with the Rule 23(e) factors.

As discussed further below, each of the applicable factors supports approval of the Settlement in this case.

**B.     The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.     The Settlement Was Reached Through Arm's-Length Negotiations Between Experienced Counsel**

The fact that the Parties reached the Settlement through arm's-length negotiations between experienced counsel following the conclusion of all fact and expert discovery and full briefing and argument of summary judgment motions supports approval of the Settlement.

The agreement to settle was reached only after extensive litigation, which included a thorough investigation of the claims and preparation of a detailed Complaint; resolution of Defendants' motion to dismiss; certification of the Class; completion of fact and expert discovery; resolution of Defendants' motion for summary judgment; and partial briefing of Lead Plaintiff's appeal. The litigation was well-advanced, and Lead Plaintiff and Lead Counsel had ample information to allow them to ascertain the strengths and risks of the claims.

Courts have also given considerable weight to the opinion of experienced and informed counsel who support settlement. In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Here, Lead Counsel has extensive experience in securities litigation and a thorough understanding of the merits and risks of the Action.

**2.     The Settlement Is Within the Range of Possible Approval**

At the preliminary approval stage, the Court need only determine whether it "will likely be able" to approve the Settlement, *see* Fed. R. Civ. P. 23(e)(1)(B), or, in other words, whether the Settlement "falls within the range of possible approval." *Reynolds v. Direct Flow Med., Inc.*, 2019 WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019). Because the $35 million Settlement represents a favorable recovery for the Class in light of the risks of the litigation, the Settlement is well within the range of possible approval.

The $35 million Settlement is a favorable result for the Class in light of the substantial risk that Lead Plaintiff and the Class might obtain no recovery in the Action. At the time the

MOTION FOR PRELIMINARY APPROVAL          10          Master File No. 4:21-cv-03343-JST
OF SETTLEMENT

Settlement was reached, all claims asserted by Lead Plaintiff had been dismissed by the Court when it entered its Order granting Defendants' motion for summary judgment. The Court found that all of Lead Plaintiff's alleged misrepresentations were inactionable either because they were statements of opinion or were not misleading. ECF No. 345. Therefore, any recovery for the Class through litigation could only be obtained if (a) Lead Plaintiff obtained a reversal of the Court's order granting Defendants' motion for summary judgment through its pending appeal, and (b) thereafter succeeded at trial on remand. There were significant risks presented by the current appeal that could have led to no recovery at all, and—even if Lead Plaintiff had succeeded on appeal and proceeded to trial—it would have faced a number of substantial arguments regarding liability and damages from Defendants.

First, there was a significant risk that Lead Plaintiff might not prevail on its pending appeal. While Lead Plaintiff believed that it had meritorious arguments for reversal, there was a substantial risk that the Court of Appeals might affirm—in full or part—the Court's order granting summary judgment. Lead Plaintiff recognizes the challenges of successfully appealing a summary judgment order, especially one issued by this Court.

Moreover, even if Lead Plaintiff prevailed on the appeal, the Court may still have granted summary judgment again to Defendants on other grounds that the Court did not reach the first time. Additionally, even if Lead Plaintiff were able to bring its claims to trial, it would still face significant challenges in proving to a jury that the alleged misstatements were false and misleading and in proving damages. With respect to each category of alleged misstatements, Defendants had substantial responses as to falsity and scienter. Specifically, Defendants would argue that, notwithstanding evidence of certain warnings that the Company received, senior Company executives honestly believed that avacopan was safe and that any outsiders' concerns did not require disclosure. Defendants also had significant responses on issues related to damages. In particular, Defendants would argue that no new facts were disclosed on May 4, 2021—the second corrective disclosure date—which, if accepted, would significantly reduce damages. Additionally, Defendants would argue that damages should be reduced or "offset" by

the amount by which ChemoCentryx's stock price increased following the FDA's approval of TAVNEOS shortly after the Class Period.

The range of potential outcomes in the litigation also supports the proposed $35 million settlement. Assuming success on appeal, Lead Plaintiff's damages expert estimates that the absolute maximum possible damages that could be established in the Action if investors were to prevail on *all* liability issues, *all* categories of misstatements, and ***both*** corrective disclosures without any offsets, would be $1.3 billion. Damages would be dramatically reduced if Lead Plaintiff did not prevail on all aspects of its claim. For example, if Lead Plaintiff were unable to establish Defendants' liability for the second corrective disclosure, damages would be reduced to $513.6 million. Accordingly, the $35 million Settlement represents a recovery of 2.7% to 6.8% of the maximum damages that could be obtained at trial under these scenarios—all of which aggressively assume that Lead Plaintiff prevailed at trial on *all* categories of misstatements for the *entire* Class Period. Additionally, if Defendants prevailed in convincing the Court or the jury that damages should be "offset" by the share price increase following the FDA's approval of TAVNEOS in October 2023, maximum damages would have been still further reduced.

Any assessment of the Settlement must, of course, take into account the substantial hurdles to success on the dismissed claims. The Ninth Circuit's overall reversal rate in private civil appeals is 13.5%.[3] Accordingly, assuming an average chance of success on appeal, one could compare the $35 million Settlement to a recovery range adjusted for the risks of appeal (for example, from $69 million to $175.5 million), which would indicate a level of recovery of 20% to 50% of these risk-adjusted damages. And these risk-adjusted damage figures do not account for the further risks that the Action would face on remand, including the risk of further summary judgment motions and trial.

---

[3] *See* U.S. Courts of Appeals—Decisions in Cases Terminated on the Merits, by Circuit and Nature of Proceeding, During the 12-Month Period Ending June 30, 2025, Table B-5, Statistical Tables for the Federal Judiciary (June 30, 2025), available at https://www.uscourts.gov/statistics/table/b-5/statistical-tables-federal-judiciary/2025/06/30.

Under either analysis, this recovery is fair and reasonable and consistent with other settlements approved in this Court and elsewhere. *See, e.g.*, *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (finding the settlement equal to 3.2% to 4.7% of estimated maximum damages was "well within the range of possible approval"); *Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (settlement amounting to 2% of damages was "consistent with the typical recovery in securities class action settlements"); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022) (approving settlement of "approximately 3.49% of the maximum estimate damages"); *IBEW Local 697 Pension Fund  v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years").

### 3.    The Settlement Treats All Class Members Fairly

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Class. All Class Members will be eligible to receive a distribution from the Net Settlement Fund in accordance with a plan of allocation to be approved by the Court. At the final Settlement Hearing, Lead Plaintiff will ask the Court to approve the proposed Plan of Allocation, which provides a formula for the distribution of the Net Settlement Fund to Class Members demonstrating a loss on their transactions in ChemoCentryx common stock related to the alleged fraud. The Plan of Allocation is based on a damages analysis prepared by Lead Plaintiff's damages expert, and Lead Counsel believes that it provides a fair and equitable method for allocating the Net Settlement Fund among injured Class Members.

### 4.    Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement

In addition to the Stipulation, the Parties entered into the Settlement MOU, which, among other things, outlined the terms and timing for the documentation of the Settlement, *see* Stipulation ¶ 60, and a confidential Supplemental Agreement, *see* Stipulation ¶ 36. The Supplemental Agreement establishes the conditions under which ChemoCentryx may terminate

the Settlement if requests for exclusion ("opt-outs") received in connection with the Settlement exceed an agreed-upon threshold. *See* Stipulation ¶ 36. If the Court does not provide for a second opportunity for Class Members to exclude themselves from the Class in connection with the Settlement, the Supplemental Agreement will have no effect. "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at \*13 (S.D.N.Y. July 21, 2020); *see also Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at \*7 (N.D. Cal. Oct. 20, 2017) (such an agreement "does not render the settlement unfair"). As is also standard in securities class actions, agreements of this kind are not made public to avoid incentivizing individuals to leverage the opt-out threshold to exact individual settlements at the class's expense. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at \*7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). The Supplemental Agreement is being submitted to the Court under seal in connection with this Motion.

## V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiff also seeks preliminary approval of the proposed Plan of Allocation of the settlement proceeds. The Court's review of the proposed Plan of Allocation is governed by the same standards of review applicable to the settlement itself—the plan must be fair and reasonable. *See Class Plaintiffs*, 955 F.2d at 1284. The Plan of Allocation, which Lead Counsel developed based on the damages analysis prepared by Lead Plaintiff's expert, provides a fair, reasonable, and equitable basis to allocate the Net Settlement Fund among Class Members who submit acceptable Claim Forms.

In developing the Plan of Allocation, Lead Plaintiff's damages expert calculated the estimated amount of alleged artificial inflation in the per-share price of ChemoCentryx common stock during the Class Period that was allegedly proximately caused by Defendants' alleged materially false and misleading statements and omissions. In calculating the alleged artificial inflation, Lead Plaintiff's damages expert considered price changes in ChemoCentryx common

stock on May 4, 2021 and May 7, 2021, in reaction to the public disclosures, adjusting for factors that were attributable to market or industry forces. *See* Notice ¶ 81. To determine the daily artificial inflation per share, the Plan uses the minimum of constant-percentage inflation and constant-dollar inflation. Specifically, for any given trading day during the Class Period, the artificial inflation is the lesser of (i) Constant-Percentage Inflation, which is 78.44% of ChemoCentryx's closing share price from November 26, 2019 through May 3, 2021, and 62.21% of the closing share price from May 4, 2021 through May 5, 2021; or (ii) Constant-Dollar Inflation, which is a fixed amount of $38.07 per share from November 26, 2019 through May 3, 2021, and $17.10 per share from May 4, 2021 through May 5, 2021. *Id.* ¶ 82.

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of ChemoCentryx common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. *See* Notice ¶ 84. Under the Plan, Claimants who purchased shares during the Class Period but did not hold those shares through the close of trading on May 3, 2021 (when the first corrective disclosure occurred) will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by the alleged fraud. *Id.* ¶¶ 83, 85.A. For shares sold from May 4, 2021 through May 6, 2021, the Recognized Loss Amount will be the lesser of (i) the amount of artificial inflation on the date of purchase *minus* the amount of artificial inflation on the date of sale; or (ii) the purchase/acquisition price minus the sale price. *Id.* ¶ 85.B. For shares sold in the 90-day period after the end of the Class Period, the Recognized Loss Amount is the least of: (i) the artificial inflation on the date of purchase; (ii) the purchase price *minus* the sales price; or (iii) the purchase price *minus* the average closing price of the stock from May 7, 2021 through the date of sale, consistent with the PSLRA. *Id.* ¶ 85.C. For shares still held as of the close of trading on August 4, 2021 (the end of the 90-day period following the end of the Class Period), Recognized Loss Amounts will be the lesser of (i) the artificial inflation on the date of purchase; or (ii) the purchase price *minus* $12.85, the average closing price for ChemoCentryx common stock during the 90-day period. *Id.* ¶ 85.D.

The sum of a claimant's Recognized Loss Amounts for all of his, her, or its Class Period purchases is the Claimant's "Recognized Claim." *See* Notice ¶ 86. The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their transactions in ChemoCentryx common stock during the Class Period. *Id*. ¶¶ 93-94. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id*. ¶ 95.

One hundred percent of the Net Settlement Fund will be distributed to eligible Claimants. Moreover, if any funds remain after an initial distribution to eligible Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective. *See* Notice ¶ 97. The Plan of Allocation also identifies the Bluhm Legal Clinic Complex Civil Litigation and Investor Protection Center at the Northwestern Pritzker School of Law ("IPC") as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to all eligible Claimants have been completed. *Id*. The IPC is a law school clinic that provides law students with the opportunity to represent clients with limited income in securities matters against stockbrokers, investment advisers, or securities firms. IPC also provides case-screening services to regulators, including FINRA, the SEC, and state regulators, as well as brokerage houses trying to identify legitimate claims. *See* https://www.law.northwestern.edu/legalclinic/investorprotection/ (last visited March 9, 2026). Lead Plaintiff believes the IPC is an appropriate *cy pres* recipient because of the nature of the securities fraud claims at issue in this Action. *See, e.g.*, *In re Plantronics, Inc. Sec. Litig.*, No. 4:19-cv-07481-JST, Order Approving Plan of Allocation, at 4-5 (N.D. Cal. Mar. 10, 2026), ECF No. 263 (approving IPC as *cy pres* recipient in a similar securities class action because the "organization has a sufficient nexus to the objectives of the securities laws . . . and the interests of class members because it (1) provides law students with opportunities to represent limited-income clients in securities matters; and (2) provides services to regulators, including the Securities and Exchange Commission"); *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *7 (N.D. Cal. Aug. 7, 2023) (approving IPC as *cy pres* recipient in securities class action because IPC "does work that aligns with the objectives of the securities laws underlying this case and the class

members' interests in protecting investors" and "there is a sufficient 'driving nexus' between the class and the *cy pres* recipient"); *see also In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 2025 WL 40785, at \*2 (S.D.N.Y. Jan. 7, 2025) (approving IPC as *cy pres* recipient). The Parties have no relationship with the IPC.

## VI.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS

### A.    Continued Retention of Kroll

Lead Plaintiff proposes that the notice and claims process be administered by Kroll Settlement Administration LLC ("Kroll"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. *See* Declaration of Lindsey Marquez (the "Marquez Decl."), attached hereto as Exhibit 4, at ¶ 2. A copy of Kroll's firm resume is attached to the Marquez Decl. as Exhibit A.

Kroll has been serving as the Notice Administrator responsible for disseminating the Class Notice in this Action, and was previously approved by the Court for this role. ECF No. 179, at ¶ 3. Prior to the dissemination of the Class Notice, Lead Counsel selected Kroll after a competitive bidding process in which three firms submitted proposals for dissemination of Class Notice and the handling of any settlement-stage notice and claims processing. *See* Declaration of Jonathan D. Uslaner ("Uslaner Decl."), attached hereto as Exhibit 3, at ¶¶ 3-4. All of the proposals received involved comparable methods of providing notice and claims processing, including the use of first-class mail and identifying potential Class Members through brokers and nominee owners, and Kroll was the lowest cost bid of the three. *Id*. ¶ 4. Lead Counsel has engaged Kroll to serve as notice or settlement administrator in one case (other than this one), in the past two years (as compared to a total of 17 such new engagements during the same period), or roughly 6% of those cases. *Id*. ¶ 5.

### B.    Proposed Form of Notice

On October 17, 2024, the Court approved Lead Plaintiff's notice to the Class of this class action. In accordance with the Court's Order, Kroll mailed 35,220 copies of the Class Notice to potential Class Members to inform them of the pendency of the Action as well as their right to

request exclusion from the Class and the procedures for doing so. *See* ECF No. 187, at ¶¶ 3-11. The Class Notice made clear that any Class Members who did not request exclusion would "be legally bound by all determinations, orders, and judgments that the Court makes in the Action, whether favorable or unfavorable." ECF No. 187-1, at 4. In response to the class notice campaign, two Class Members made requests for exclusion, demonstrating that Class Members who wished to request exclusion had an opportunity to do so. *See* ECF No. 187, at ¶ 15; ECF No. 187-5.

Lead Plaintiff now seeks the Court's permission to serve notice of the proposed Settlement. Rule 23(e)(1)(B) instructs that notice of a class action settlement be directed "in a reasonable manner to all class members who would be bound" by the proposed settlement. The settlement notice "must 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

As outlined in the Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Postcard Notice (Exhibit 1 to the Preliminary Approval Order) by first-class mail to all Class Members who were previously mailed a copy of the Class Notice, and to all other Class Members who may be identified by brokers and nominees. A Summary Settlement Notice will also be published in *The Wall Street Journal* and transmitted over *PR Newswire*. Lead Counsel will also make copies of a more detailed Settlement Notice and Claim Form available for download via the website to be established by the Claims Administrator, www.ChemoCentryxSecuritiesLitigation.com or upon request. The website will also provide copies of the Complaint, the Stipulation, and other case and Settlement documents.

Defendants will serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* (2005) ("CAFA") within ten calendar days of the filing of the Stipulation with the Court. *See* 28 U.S.C. § 1715(b). The Parties are not aware of any other such required notices to government entities or others. *See* N.D. Cal. Guid. ¶ 10.

The proposed notices include all the information required by Rule 23 and the PSLRA, as well as additional information. Courts routinely find that comparable notice procedures meet the requirements of due process, Rule 23, and the PSLRA. *See, e.g.*, *Yaron v. Intersect ENT, Inc.*, 2021

MOTION FOR PRELIMINARY APPROVAL          18          Master File No. 4:21-cv-03343-JST
OF SETTLEMENT

WL 5184290, at *2 (N.D. Cal. Nov. 5, 2021) (approving comparable notice plan and finding "that the dissemination of the Postcard Notice, the online posting of the Notice, and the publication of the Summary Notice: . . . constituted the best notice practicable under the circumstances; [and] satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the [PSLRA], and all other applicable law and rules"); *Vataj v. Johnson*, 2021 WL 5161927, at *5 (N.D. Cal. Nov. 5, 2021) (finding notice program using postcard notice in securities class action complied with Rule 23).

Class Members were previously advised that, if they did not request exclusion by January 14, 2025, they would "be legally bound by all determinations, orders, and judgments that the Court makes in the Action, whether favorable or unfavorable." Given the extensive notice program already undertaken, the ample opt-out opportunity already provided to Class Members, and that Class Members will receive notification of the settlement and the opportunity to object at a formal fairness hearing, no further opt-out opportunity is necessary. *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out."); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at *5 (S.D. Cal. Feb. 19, 2020) (no second opt-out opportunity necessary because of "extensive notice program undertaken in connection with class certification" and "ample opportunity provided to Class Members to request exclusion from the Class"); *In re Wash. Mut., Inc.*, 2015 WL 12803633, at *1 (W.D. Wash. June 22, 2015) ("in light of the extensive notice program undertaken in connection with the earlier settlements [and] the ample opportunity provided to Class Members to request exclusion from the Class at that time, . . . the Court will exercise its discretion under Rule 23(e)(4) and will not provide Class Members with a second opportunity to exclude themselves from the Class in connection with this Settlement").

### C.    Claims Processing

The net proceeds of the Settlement will be distributed to Class Members who submit eligible Claim Forms with required documentation to Kroll. Kroll will review and process the claims under the supervision of Lead Counsel, will provide claimants with an opportunity to cure

any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.

Kroll estimates that a total of 36,000 Postcard Notices will be mailed, based on the number of Class Notices mailed in 2024, and that approximately 18,000 claims will be received, based on an estimated 50% response rate, which Kroll finds reasonable and typical. *See* Marquez Decl. ¶¶ 19-20. Summary information for three recent cases in which BLB&G acted as lead counsel is attached to the Uslaner Decl. as Exhibit A. These cases were selected because they were all securities class actions with roughly comparable settlements and class sizes.

### D.    Estimated Notice and Administrative Costs

Kroll's fees for administration of the Settlement are charged on a per-claim basis and expenses will be billed separately (including expenses for printing and mailing the Postcard Notice, publishing the Summary Settlement Notice, maintaining the case website, and operating the toll-free telephone helpline). Because the costs are dependent on how many Postcard Notices are ultimately mailed, how many Claims are ultimately received and processed, and other contingencies, at this time only an estimate of the total Notice and Administration Costs can be provided. Based on the estimates of the number of Postcard Notices expected to be mailed and claims expected to be received discussed above, Kroll estimates that the total Notice and Administration Costs in connection with the Settlement, including broker and nominee fulfillment costs, will be approximately $208,200. *See* Marquez Decl. ¶ 27. In addition, the Notice and Administration costs will also include the $98,166.74 that Kroll incurred in disseminating the Class Notice. *Id*. The Notice and Administration Costs are necessary to effectuate the Settlement and are reasonable in relation to the value of the Settlement (the estimated total administrative costs represent just 0.9% of the total Settlement Amount). The Notice and Administration Costs will be paid from the Settlement Fund. *See* Stipulation ¶¶ 9, 14.

### VII.    ATTORNEYS' FEES AND LITIGATION EXPENSES

As explained in the Postcard Notice and the Settlement Notice (¶¶ 5, 55), Lead Counsel intends to seek an award of attorneys' fees of up to 22% of the Settlement Fund, and payment of

Litigation Expenses not to exceed $5 million. Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 days before the Settlement Hearing.

For purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel notes that the maximum fee that Lead Counsel will request is below the 25% benchmark percentage for attorneys' fees in the Ninth Circuit, *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989), and is well within the range of percentage fees awarded in comparable securities class actions with significant contingency fee risks, *see, e.g.*, *In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prods. Liab. Litig.*, 2019 WL 2077847, at *5 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *1 (N.D. Cal. Mar. 2, 2018) (awarding 25% of $29.5 million settlement).

Moreover, Lead Counsel has thus far devoted over 61,000 hours to this Action, with a lodestar of approximately $39 million. Accordingly, the requested fee will represent a substantial "negative" or fractional multiplier of 0.2, which is well below the range of multipliers typically awarded in actions like this one with substantial contingency fee risk. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (affirming 28% fee award representing 3.65 multiplier). If preliminary approval is granted, Lead Counsel will present detailed information on its lodestar in connection with its fee application at final approval.

Lead Counsel also intends to seek payment for Litigation Expenses in an amount not to exceed $5 million, which includes costs of retaining experts (of over $3.3 million), mediation fees, and online legal and factual research, among other costs.

## VIII. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of notices, and deadlines for submitting

claims or for objecting to the Settlement.[4] The Parties respectfully propose the schedule set forth in Appendix A, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order. Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date at least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. As this motion is unopposed, the Parties request the Court consider this motion for preliminary approval on the papers at this time.

## IX.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order. Attached as Appendix B is a checklist demonstrating the Parties' compliance with the Northern District of California Procedural Guidance for Class Action Settlements.

Dated: March 13, 2026

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*-and-*

Salvatore J. Graziano (admitted *pro hac vice*)
(salvatore@blbglaw.com)
Katherine M. Sinderson (admitted *pro hac vice*)
(katiem@blbglaw.com)
Jorge G. Tenreiro (admitted *pro hac vice*)
(jorge.tenreiro@blbglaw.com)
John Esmay (admitted *pro hac vice*)
(john.esmay@blbglaw.com)
Shane Avidan (admitted *pro hac vice*)
(shane.avidan@blbglaw.com
Jim Briggs (admitted *pro hac vice*)

---

[4] The blanks for certain deadlines currently contained in the notices will be filled in once the Court sets those dates and prior to mailing to Class Members.

(jim.briggs@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiff Indiana Public Retirement System and Lead Counsel for the Class*

**Appendix A**

**Proposed Schedule of Settlement Events**

| **Event** | **Time for Compliance** | **Example Dates**[5] |
|---|---|---|
| Deadline to commence mailing of Postcard Notice and post Settlement Notice and Claim Form ("Notice Date") | 15 business days after entry of Preliminary Approval Order (Preliminary Approval Order ¶¶ 4(a), 4(b)) | April 10, 2026 |
| Deadline for publishing Summary Settlement Notice | 10 business days after Notice Date (*Id.* ¶ 4(c)) | April 24, 2026 |
| Deadline for filing final approval papers | 35 calendar days prior to the Settlement Hearing (*Id.* ¶ 24) | May 22, 2026 |
| Deadline for objections or to opt back into Class. | 21 calendar days prior to the Settlement Hearing (*Id.* ¶¶ 12, 15, 16) | June 8, 2026 |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (*Id.* ¶¶ 4(d), 24) | June 22, 2026 |
| Settlement Hearing | 100 days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (*Id.* ¶ 2) | June 29, 2026 |
| Deadline for submission of Claim Forms | 90 calendar days after the Notice Date (*Id.* ¶ 8) | July 9, 2026 |

---

[5] The "Example Dates" are representative dates that would apply if the Court entered the Preliminary Approval Order on March 20, 2026 and set the Settlement Hearing for June 29, 2026.

**Appendix B**

| N.D. Cal. Procedural Guidance for Class Action Settlements<br>Items to Address at Preliminary Approval | Where Procedural Guidance is<br>Addressed in Papers |
|---|---|
| **(1) INFORMATION ABOUT THE SETTLEMENT—The motion for preliminary approval should state, where applicable:** | |
| 1. Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate. | **Motion at 7:11-22** |
| 2. Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate. | **Motion at 7:23 – 8:13** |
| 3. The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims. | **Motion at 7:2-3, 10:20 – 13:12;**<br>**Settlement Notice p. 1, ¶¶ 2, 28-30** |
| 4. Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state. | **Motion at 8:4-5** |
| 5. The proposed allocation plan for the settlement fund. | **Motion at 14:16 – 17:4**<br>**Settlement Notice Appx. A** |
| 6. If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples. | **Motion at 20:4-9;**<br>**Uslaner Decl. (Motion Ex. 3), at Ex. A;**<br>**Marquez Decl. (Motion Ex. 4), ¶ 20** |
| 7. In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate. | **Motion at 7:7-10;**<br>**Stipulation ¶ 13** |
| **(2) SETTLEMENT ADMINISTRATION—The parties are expected to get multiple competing bids from potential settlement administrators. In the motion for preliminary approval, the parties should:** | |
| 1. Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years. | **Motion at 17:8-24;**<br>**Uslaner Decl. ¶¶ 2-5** |

1

| N.D. Cal. Procedural Guidance for Class Action Settlements Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| 2. Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs. | **Motion at 20:10-25; Marquez Decl. ¶¶ 2-3, 26-35** |
| **(3) NOTICE—The parties should ensure that the class notice is easily understandable, in light of the class members' communication patterns, education levels, and language needs. The notice should include the following information:** | |
| 1. Contact information for class counsel to answer questions. | **Settlement Notice ¶¶ 6, 77; Summary Settlement Notice p. 3** |
| 2. The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, a claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case. | ***See generally* proposed notices** |
| 3. Instructions on how to access the case docket via PACER or in person at any of the court's locations. | **Settlement Notice ¶ 77** |
| 4. The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class. | **Settlement Notice pp. 3-4, ¶¶ 61-62, 69; Summary Settlement Notice p. 2** |
| 5. A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed. | **Settlement Notice p. 4, ¶¶ 61, 69 Summary Settlement Notice p. 2** |
| The parties should explain how the notice distribution plan is effective. Class counsel should consider the following ways to increase notice to class members: identification of potential class members through third-party data sources; use of text messages and social media to provide notice to class members; hiring a marketing specialist; providing a settlement website that estimates claim amounts for each specific class member and updating the website periodically to provide accurate claim amounts based on the number of participating class members; and distributions to class members via direct deposit. The notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2). | **Motion at 17:25 – 19:7; Marquez Decl. ¶¶ 6-16** |
| If U.S. mail is part of notice distribution plan, notice envelope should be designed to enhance the chance that it will be opened. | **N/A** |

| N.D. Cal. Procedural Guidance for Class Action Settlements Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| Below is suggested language for inclusion in class notices: This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www._____.com, by contacting class counsel at _____, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, [insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS. | **Settlement Notice ¶ 77** |
| **(4). OPT-OUTS** | |
| The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information or hurdles. The notice should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out. | **N/A** |
| **(5) OBJECTIONS** | |
| Objections must comply with Federal Rule of Civil Procedure 23(e)(5). | **Settlement Notice ¶ 63** |
| The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections. | **Settlement Notice ¶¶ 63-64** |
| Below is suggested language for inclusion in class notices: "You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you should object. Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number ( _____ v. _____, Case No. _____), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, | **Settlement Notice ¶¶ 63-64** |

| N.D. Cal. Procedural Guidance for Class Action Settlements Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| United States District Court for the Northern District of California, [insert appropriate Court location here], and (c) be filed or postmarked on or before _____.” | |
| **(6) ATTORNEYS' FEES AND COSTS** | |
| Although attorneys' fee requests will not be approved until the final approval hearing, Class Counsel should include information about the fees and costs (including expert fees) they intend to request, their lodestar calculation (including total hours), and resulting multiplier. | **Motion at 20:27 – 21:22; Settlement Notice ¶¶ 5, 55; Summary Settlement Notice p. 2** |
| In a common fund case, the parties should include information about the relationship between the amount of the common fund, the requested fee, and the lodestar. | **Motion at 21:13-16** |
| To the extent counsel base their fee request on having obtained injunctive relief and/or other non-monetary relief for the class, counsel should discuss the benefit conferred on the class. | **N/A** |
| **(7) SERVICE AWARDS** | |
| Although service award requests will not be approved until the final approval hearing, the parties should include information about the service awards they intend to request as well as a summary of the evidence supporting the awards. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class representatives. | **N/A** |
| **(8) CY PRES AWARDEES** | |
| If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members' claims. | **Motion at 16:10 – 17:4; Settlement Notice Appx. A, ¶ 97** |
| The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. | **Motion at 17:3-4** |
| **(9) TIMELINE** | |
| The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs. | **Motion at 21:23 – 22:6 and Motion Appendix A** |
| **(10) CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS** | |
| The parties should address whether CAFA notice is required and, if so, when it will be given. | **Motion at 18:22-24** |
| In addition, the parties should address substantive compliance with CAFA. For example, if the settlement includes coupons, the parties should explain how the settlement complies with 28 U.S.C. § 1712 | **N/A** |
| In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA). | **Motion at 18:24-25** |

| N.D. Cal. Procedural Guidance for Class Action Settlements Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| **(11) COMPARABLE OUTCOMES** | |
| Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes. Lead counsel should provide the following information for as many as feasible (and at least one) comparable class settlement (i.e. settlements involving the same or similar claims, parties, issues):<br><br>1. The claims being released, the total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to cy pres recipients, the administrative costs, the attorneys' fees and costs, the total exposure if the plaintiffs had prevailed on every claim.<br><br>2. Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests.<br><br>3. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.<br><br>Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases, supported by analysis in the text of the motion. | **Motion at 20:7-9;<br>Uslaner Decl. ¶ 6 & Ex. A** |
| **(12) ELECTRONIC VERSIONS** | |
| Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices should be submitted to the presiding judge's Proposed Order (PO) email address when filed. Most judges in this district used Microsoft Word, but counsel should check with the individual judge's Courtroom Deputy. | **To be done upon filing** |
| **(13) OVERLAPPING CASES** | |
| Within one day of filing of the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement. | **N/A** |